## THE COASTWISE.

(District Court, D. Massachusetts. July 3, 1923.)

No. 2011.

**Maritime liens ⬤⟳43—Lien for coal furnished held waived.**

Evidence *held* to establish that a corporation, which furnished coal in Italy to an American ship and the corporation subcharterer under a cargo charter party, were under the same ownership and in effect different offices of the same general business, and under such circumstances acceptance of a draft on the general charterer who by the terms of the subcharter was to pay for the coal, *held* a waiver of any claim against the vessel.

In Admiralty. Suit by the Societa Anonima Riccardo Gaulino against the steamship Coastwise. Decree for respondent.

Arthur J. Santry, of Boston, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

MORTON, District Judge. This is a libel by the Societa Anonima Riccardo Gaulino, of Genoa, Italy, which I shall refer to as the Gaulino Company, to recover the price of 512 tons of coal supplied to the steamer Coastwise at that port, about December 1, 1919, at $34 per ton, a total amount of $17,408. There is no dispute but what the coal was supplied as claimed by the libelant at the price stated. The Coastwise was under charter at the time, and the controversy is whether the vessel herself is liable. The facts on this point are as follows:

The steamer was owned by the Coastwise Transportation Company, and was chartered on June 19, 1919, for 12 months, to one Ellsworth. By the terms of this charter party the charterer was to "provide and pay for all the coal" (clause 3). But it contains no provisions forbidding the charterer from imposing liens upon the steamer or binding him to discharge them if they arose. If time be lost by the steamer "from deficiency of men or stores, * * * for more than 24 consecutive hours," the payment of hire is suspended during the interval (clause 16). The captain was appointed and paid by the owner (clause 1).

On August 6, 1919, Ellsworth subchartered the Coastwise to the Marine & Commerce Corporation of America for a series of voyages between this country and Italy. It was a cargo charter, under which

Ellsworth bore certain operating expense of the steamer, including coal, and was to be paid specified amounts per ton of cargo carried. The steamer went into service under the subcharter and completed one voyage. The present case grows out of the second voyage. She reached Genoa upon it and discharged her cargo. Ellsworth had arranged to have her bunkers filled at Gibralter for the return trip. But while in Genoa Capt. Pike, of the Coastwise, learned that a strike was in progress at Gibraltar, so that the steamer was likely to be delayed if she attempted to coal there. He accordingly applied to the libelant to supply him with bunker coal, and made the arrangement as to quantity and price already stated, under which the coal was delivered. He paid for it with a sight draft on Ellsworth in the amount of $17,408, and the steamer left for this country. The draft was dishonored by Ellsworth and has never been paid. Ellsworth did not dispute his liability, but was unable to raise the money. Some time afterwards the present proceedings against the steamer were instituted. The draft is still outstanding, in the possession or control of the libelant, and was offered in evidence by the libelant in these proceedings.

As the contract was made and the coal was furnished in Italy, the rights of the parties are governed by Italian law. Counsel have greatly lightened the work of the court by investigating that question and agreeing that by Italian law the rights of a person who supplies a foreign vessel under the circumstances here disclosed depend upon the law of the vessel's flag; i. e. upon the law of this country.

The Maritime Lien Act (36 Stat. 604; U. S. Comp. Stat. § 7783 et seq.) provides in substance that any person furnishing supplies to a vessel upon order of a person authorized by the owners shall have a maritime lien on her, without the necessity of alleging or proving that credit was given to the vessel; that the master of a vessel "shall be presumed to have authority from the owner" to procure supplies (section 2); that such presumptive authority "shall extend to officers and agents appointed by a charterer"; that nothing in the act "shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, * * * or for any other reason, the person ordering * * * supplies * * * was without authority to bind the vessel therefor" (section 3); and that the act shall not prevent a furnisher of supplies from waiving his right to a lien at any time, by agreement or otherwise (section 4).

As it is admitted that the coal was furnished on order of the master, and is clear, for reasons which I shall point out, that the libelant was or ought to have been aware that the steamer was chartered to Ellsworth, the case turns on two principal questions: (1) Did the libelant waive its right to a lien? and (2) by the terms of the charter party was the master without authority to bind the vessel?

The first question is largely an issue of fact. The contract for the coal was oral, and the testimony about it is in irreconcilable conflict. Capt. Pike testifies that he procured the coal on the express understanding that the vessel was under charter and was not liable for it, and that it was furnished on the credit of Ellsworth, on whom the

draft was drawn. Cartechini and Barisione, who acted for the libelant, deny this, and say that there was an explicit reservation of liability against the vessel, and that the draft was accepted only upon the express condition that it should be paid when presented. They also say that they were not informed that the vessel was under charter and supposed they were dealing with the owner's representative. As to this, a letter of the Gaulino Company, dated October 28, 1919 (more than a month before this coal was furnished), relating to the first voyage of this steamer, refers in most specific terms to the charter party from Ellsworth to the Marine & Commerce Corporation, which describes him as "chartered owner" ; and the Gualino's Company's letter of December 8, 1919 (more fully stated below), is even more specific in its reference to the charter party of August 6, 1919, and discusses certain terms thereof. Notwithstanding the testimony of Cartechini and Barisione, these letters leave no room for doubt as to the Gaulino Company's knowledge that the vessel was under charter to Ellsworth, not owned by him.

Under ordinary circumstances, I should hesitate to believe that such a large amount of coal (in value) would have been supplied to the vessel on the credit of an individual in a foreign country. The libelant was, however, closely affiliated with the Marine & Commerce Corporation, by which the coal was exported. The minute book of the Marine & Commerce Corporation shows that Riccardo Gaulino owned, in August, 1919, all its capital stock. He held it for the Societa Nationale, which owned all the stock of the Gaulino Company. In a letter of October 6, 1920, the Marine & Commerce Corporation refers to "disbursements paid by us or *our Italian office* (which was evidently the Societa Gaulino) against each one of these steamers (including the Coastwise) which *we* have so far been unable to collect from Mr. Ellsworth." (Italics mine.) The Marine & Commerce Corporation billed the charge for this coal to Ellsworth, as it did other disbursements made by the Gaulino Company, and it also billed to him the amount of the draft. The libelant, under date of December 8, 1919, wrote to the Marine & Commerce Corporation, referring to the preceding voyage of the Coastwise and inclosing statement "showing disbursements made by us *for your account* [italics mine] in connection with the Savona call of this ship," as well as a statement of expenses to be borne by the shipowner. The libelant further says in this letter:

"As, according to the charter party, the coal for the ship was to be supplied by the shipowner, you will have the shipowner *refund* the cost of this 477 tons, *which were entered to your debit* [italics mine], as stated in another letter of ours bearing to-day's date."

Referring to certain charges the letter says:

"We believe that you will experience no difficulty in securing the refund of this sum, because, according to the charter party, time saved devolves entirely to the profit of the shipowner."

In its letter of July 7, 1919, to Mr. Graziani, the libelant refers to "the matter of your employment with our New York associated company, the Marine & Commerce Corporation in America."

It thus appears that the Societa Gaulino and the Marine & Commerce Corporation were very closely related, and were in effect different offices of the same general business. In substance, the case is one in which the cargo charterer has, in a foreign port, advanced money to pay for coaling the steamer, and has accepted a draft upon the charterer for the disbursement. Under such circumstances it is not unreasonable to believe that credit might be extended to Ellsworth, as Pike testifies was done. The libelant evidently supposed that the Marine & Commerce Corporation would be owing Ellsworth substantial sums for freight, and would be in a position to protect it if Ellsworth did not pay. The correspondence contains no suggestion of any right reserved against the steamer. The testimony of Cartechini and Barisione is greatly weakened by the letters, while Pike's story of the agreement is direct and straightforward, and he has no present interest to misstate it. The fact that the Marine & Commerce Corporation billed the coal to Ellsworth indicates that the sum was charged to it by the Gaulino Company, as had been done with respect to the coal supplied by the libelant to the Coastwise on her preceding voyage under the same charter party. If so, the libelant's conduct is inconsistent with the agreement as stated by Cartechini and Barisione, and tends to support Pike's testimony. Upon all the evidence I find and rule that the libelant waived any claim against the vessel, and furnished the coal on the credit of Ellsworth and in the expectation that the amount would be charged against him by the Marine & Commerce Corporation in the settlement under the charter party.

It follows that the libel must be dismissed. It is unnecessary to decide the other questions argued.

An order may be entered, dismissing the libel, with costs.