## THE CITY OF ATLANTA.

(District Court, S. D. Georgia, E. D. September 16, 1924.)

1. **Maritime liens ⊚⇒7, 8—Lighterage, tarpaulins, and towage of lighters are "necessaries," as to lien, if furnished to vessel other than owner.**

Lighterage, tarpaulins, and towage of lighters are included in "necessaries," and, if furnished to vessel, as distinguished from credit extended to owner, charterer, or other person, entitle furnisher to maritime lien.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries (for Vessels).]

2. **Maritime liens ⊚⇒64—Allegation that lighterage furnished in discharging cargo was necessitated by congested condition of harbor held sufficient to entitle furnisher to maritime lien.**

Allegation in libel that libelant furnished lighterage, tarpaulins, and towage of lighters to discharge cargo on credit of vessel, and that such service was necessitated by congested condition of harbor, held sufficient to show necessity of lighterage service to entitle furnisher to maritime lien.

3. **Maritime liens ⊚⇒2—Claim for services and supplies furnished American vessel in Cuban harbor is governed by Cuban laws.**

Claim to maritime lien for services and supplies furnished American vessel in Cuban harbor is governed by laws of Cuba.

4. **Maritime liens ⊚⇒2—Cuban law held to give right of attachment against vessel for supplies and services, creating right to libel in United States courts.**

Cuban statute held to give right of attachment or right to proceeding in rem against vessel for supplies and services furnished in Cuban harbor, which creates right to libel in courts of United States.

5. **Statutes ⊚⇒281—Libelant, for supplies and services furnished vessel, relying on foreign law, must plead and prove such law.**

Libelant, relying on law of foreign country, where supplies were furnished or services rendered to vessel, must plead and prove such law.

6. **Statutes ⊚⇒281—Libelant, relying on foreign law to enforce claim for supplies and services, must allege to what extent he relies thereon.**

If libelant relies on law of foreign country, in which supplies were furnished and services rendered to vessel, to exclusion of general maritime law, he should plead such foreign law in full, and if he intends foreign law to be supplemented by general maritime law, in so far as not altered by such foreign law, he should so allege.

7. **Maritime liens ⊚⇒64—Allegation that supplies and services were furnished on credit of vessel held defective in failing to allege at whose request they were furnished and authority of parties.**

Allegation in libel that lighterage, tarpaulins, and towage were furnished on credit of vessel, and that under law of Cuba libelant is entitled to lien on vessel, held defective, in failing to allege at whose instance or request services and supplies were furnished, or what relation party on whose orders they were furnished bore to vessel.

In Admiralty. Libel by the Compania de Flete y Remolque against the steamship City of Atlanta, claimed by the Ocean Steamship

Company of Savannah. On claimant's exceptions to libel. Exceptions sustained, and libelant allowed 30 days to amend, and, on failure to do so, libel to stand dismissed.

See, also, 17 F.(2d) 311.

Anderson, Cann & Cann, of Savannah, Ga., for libelant.

Lawton & Cunningham, of Savannah, Ga., for claimant.

BARRETT, District Judge. The libel as amended alleges that libelant is a corporation under the laws of Cuba; that the steamship City of Atlanta is an American steamship, with her home port and port of registry at Savannah, Ga.; that in August and September, 1920, libelant, in the port of Havana, republic of Cuba, furnished such vessel on the credit of such vessel the necessary lighters, tarpaulins, and towage of such lighters, in order that she might discharge her cargo and proceed upon her voyage; that by reason of the congested condition of the wharves in Havana harbor no other method was at the time and place available for unloading such vessel, and delay in unloading would have been very hurtful to the vessel and its owner; that the prices charged for such services were reasonable and the market prices; that libelant is entitled to a lien against such vessel under the general maritime law for the amounts claimed; that it is entitled to a lien against such vessel under the law of Cuba quoted in the libel for the amounts claimed; that it is entitled to a lien against said vessel by virtue of the act of Congress of the United States of America (36 Stat. 604, being Comp. St. §§ 7783–7787) entitled "An act relating to liens on vessels for repairs, etc.," for the amounts claimed; that such services "were furnished to the said vessel upon the request and order of B. L. Stafford, then and there acting in behalf of said steamer, City of Atlanta, whom the libelant then and there believed represented the owner of said vessel; the said B. L. Stafford was the person to whom the management and handling of said steamship were intrusted by the owner thereof at said times and place; the libelant had no notice that said City of Atlanta was on charter at the time herein referred to; libelant was not put on notice of any fact which would put a reasonably prudent person on inquiry as to the ownership of said vessel"; and that the "said lighters, tarpaulins and towage were then and there necessary to the said vessel for the discharge of the cargo."

The Ocean Steamship Company of Savannah filed claim to said vessel after it was libeled, and filed certain exceptions to the libel. The exceptions to the inadequacy or indefiniteness of the libel have been met by an amendment, except that dealt with in the opinion. The challenge that remains is as to the right to the libel claimed by libelant.

[1, 2] 1. Lighterage, tarpaulins, and towage of lighters are included in "necessaries," and, if furnished to the vessel, as distinguished from credit extended to the owner, charterer, or other person, establishes a maritime lien. The Garonne (C. C. A. Ninth Circuit) 160 F. 847 (2); The Lassell (D. C.) 193 F. 539; The Owego (D. C.) 292 F. 403; The Kootenai (D. C.) 295 F. 422. In the Owego Case, supra, it is held that: "While there is presumption of necessity for supplies usually needed by ship and furnished on master's order, there is no presumption of necessity for use of lighter, especially when hired by ship's agent, and concrete facts should be shown from which necessity may be found." The facts as set forth in this libel show such necessity.

[3] 2. The law of the republic of Cuba governs. "In the matter of foreign contracts the law of the place where the contract was made furnishes the rule of decision, unless the contracting parties clearly appear to have had some other law in view." 1 Corpus Juris, p. 1262, § 50.

"In these and like cases, where the lien or privilege is created by the lex loci contractus, it will generally, although not universally, be respected and enforced in all places where the property is found, or where the right can be beneficially enforced by the lex fori. And on the other hand, where the lien or privilege does not exist in the place of the contract, it will not be allowed in another country, although the local law where the suit is brought would otherwise sustain it." Story on Conflict of Laws, p. 527, § 322.

"As between vessels of the United States and foreign countries: Here, too, the law of the place where the supplies are furnished (that is, in the case of foreign vessels, the general maritime law as adopted in the United States) governs, although the law of the vessel's flag may be different." 26 Cyc. p. 810.

"The law of the place where a contract is made governs its nature, obligation and interpretation, unless it appears that the parties, when entering into the contract, intended to be bound by the law of some other country." Liverpool & Great Western Steam Co. v. Phenix Insurance Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788.

The following authorities sustain such principle: In re Insurance Co. (D. C.) 22 F. 109; The Maud Carter (D. C.) 29 F. 156; The Scotia (D. C.) 35 F. 907; The Woudrichem (D. C.) 278 F. 568; The Coastwise (D. C.) 291 F. 166; Cuba R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40.

[4] 3. The law of the republic of Cuba pleaded is as follows:

"580. In all judicial sales of vessels for the payment of creditors, the following shall have preference in the order stated:

"1. The credits in favor of the public treasury which are accounted for by means of a judicial certificate of the competent authority.

"2. The judicial costs of the proceedings, according to an appraisement approved by the judge or court.

"3. The pilotage charges, tonnage, dues and the other sea or port charges, proven by means of proper certificates of the officers intrusted with the collection.

"4. The salaries of the caretakers and watchmen of the vessel, and any other expense connected with the preservation of said vessel, from the time of arrival until her sale, which appear to have been paid or are due by virtue of a true account approved by the judge or court.

"5. The rent of the warehouse when the rigging and stores of the vessel have been taken care of, according to contract.

"6. The salaries due the captain and crew during their last voyage, which shall be vouched for by virtue of the liquidation made from the shipping articles and account books of the vessel, approved by the chief of the bureau of merchant marine where there is one, and in his absence, by the consul, or judge, or court.

"7. The reimbursement for. the goods of the freight the captain may have sold in order to repair the vessel, provided the sale has been ordered by a judicial instrument executed with the formalities required in such cases, and recorded in the certificate of the registry of the vessel.

"8. The part of the price which has not been paid the last vendor, the credits pending for the payment of material and work in the construction of the vessel, when it has not navigated, and those arising from the repair of the vessel and its provisioning with victuals and fuel during its last voyage. In order that said credits may enjoy the preferences contained in this number, they must appear by contracts recorded in the commercial registry, or if they were contracted for the vessel while on a voyage, and said vessel has not returned to the port where she is registered they must be proven with the authority required in such cases and entered in the certificate of the record of said vessel.

"9. The amounts borrowed on bottomry bonds before. the departure of the vessel, proven by means of the contracts executed according to law and recorded in the commercial registry the amounts borrowed during the voyage with the authority mentioned in the foregoing number, filling the same requisites, and the insurance premium, proven by the policy of the contract or certificate taken from the books of the broker.

"10. The indemnity due the shippers for the value of the goods shipped, which were not delivered to the consignees, or for averages suffered for which the vessel is liable, provided either appear in a judicial or arbitration decision."

(Note. The credits referred to in Nos. 7, 9, and 10 shall have preference over the marine mortgage, without requiring to be recorded in commercial registry. Article 31 of the Marine Mortgage Law.)

"584. The vessels subject to the liability for the credits mentioned in 580 may be attached and judicially sold in the manner prescribed in 579, in the port in which they are, at the instance of any of the creditors; but if they should be freighted and ready to sail, the attachment cannot take place, except for debts contracted by reason of the preparation and provisioning of the vessel for said voyage, and even then the attachment shall cease if any person interested in the sailing should give bond for the return of the vessel within the period fixed in the certificate of navigation, and if it should not return within the said period, even were the delay caused by force majence, the person giving the bond is bound to pay the debt in so far as it may be legal.

"For debts of any other kind whatsoever not included in the said 580, the vessel can only be attached in the port of her registry."

A fair interpretation of this statute is that a right of attachment or proceeding in rem against the vessel is thereby established. Such a right of attachment creates a right to libel in the courts of the United States.

"Under the statute of 24 and 25 Victoria, commonly known as the Admiralty Court Act, jurisdiction exists in the English Courts of Admiralty to enforce by proceedings in rem a claim by an owner, domiciled in Canada, of a bill of lading of goods carried into a port of Wales, where the master abandoned the voyage without lawful excuse, improp-

·erly entered into a new contract of affreightment, and proceeded on a distant voyage, leaving the goods at the Welsh port, and neither carrying them himself to their port of ·destination, nor seeking to forward them in .another vessel.

"Redress may be had in our admiralty ·courts in the case of a master thus there acting, although the ship have been a foreign ·vessel, and the shipment made between foreign countries, as Scotland and Canada. And this is so whether the statute be regarded as ·giving a maritime lien or only a right to sue the ship."

The Maggie Hammond (5th and 6th headnotes) 76 U. S. (9 Wall.) 435, 19 L. Ed. 772.

4. The fact that the law of the republic ·of Cuba governs eliminates all claims by libelant to a lien under the general maritime law and under the act of the Congress of the United States of America entitled "An act relating to liens on vessels for repairs, etc.," and such claims ·are stricken. We deal only ·with the claim under the law of the republic ·of Cuba.

[5, 6] 5. It is inferable from what is pleaded that the entire law of the republic of Cuba as to maritime liens is not pleaded. The law pleaded omits to cover certain essentials; among others, by whom must the debt be contracted in order to bind the ship. The obligation is on libelant, when he relies upon the law of a foreign country, where the supplies were furnished or the services rendered, to plead and prove such law. 21 R. C. L. 438; Liverpool & Great Western Co. v. Phenix Insurance Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788; Cuba Railroad v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40; The Woudrichem (D. C.) 278 F. 568. If such law was intended to cover the entire subject, to the exclusion of the general maritime law, it should be so .pleaded and proven. If· it be intended to be supplemented by the principles of the ,general maritime law, in so far as not altered by the law of Cuba, this should so appear.

[7] In the present libel there is an utter absence of allegations as to the law of Cuba specifying who is authorized to bind the ship, or that the general maritime law is in force in ·Cuba, where not altered by the law pleaded. There is an allegation that "the said lighters, ·tarpaulins, and towage were furnished to the said vessel on the credit of the said vessel and under the following law of the republic of Cuba the libelant is entitled to a lien on said ·vessel." But claimant challenges in its ex·ceptions that "it does not appear from the libel at whose instance or request or upon whose orders the lighters, tarpaulins, and towage were furnished to the said vessel, or what relation the party or parties upon whose orders said things were furnished bore to said vessel." This challenge should be fairly met. The allegations as to B. L. Stafford are no compliance, for they are manifestly applicable to only that portion of the libel which relies upon the cited act of Congress of the United States of America. Even if such allegations could be construed as a part of the claim of lien under the law of Cuba, they would not sustain the libel, for they are insufficient under the general maritime law, and we are not informed as to any law of Cuba that would make them sufficient.

Claimant is entitled to have pleaded in full the law of Cuba relied on, and also a definite averment of the officer or person by whom the services of libelant were procured. Failure in either of these will call for the dismissal of the libel. Libelant is allowed 30 days from the date of the filing of this opin·ion and order in the office of the clerk of court to amend its libel as indicated. Upon failure to file such amendment in said clerk's office within said time, said libel will stand dismissed, without further order, at cost of libelant.