THE WINNEBAGO.[1]

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

Nos. 218, 219.  Argued February 28, 1907.—Decided April 8, 1907.

A state law will not be held unconstitutional in a suit coming from a state court at the instance of one whose constitutional rights are not invaded, because as against a class making no complaint it might be held unconstitutional.

Whether a state lien statute, otherwise constitutional, applies to vessels not to be used in the waters of the State; on whose credit the supplies were furnished; whether the lien was properly filed as to time and place; and what the effect thereof is as to *bona fide* purchasers without notice, are not Federal questions, but the judgment of the state court is final and conclusive on this court.

Whether a state lien statute is unconstitutional as permitting the seizure and sale of a vessel and the distribution of the proceeds in conflict with

———————————

[1] Docket titles: 218, Iroquois Transportation Company, Claimant of the Steamer " Winnebago," *v.* De Laney Forge and Iron Company; 219, Same *v.* Edwards.

the exclusive jurisdiction in admiralty of the Federal courts will not be
determined in a suit from the state courts where no holder of a maritime
lien is present contesting the unconstitutionality of the statute.

A contract to build a vessel is not a maritime contract enforceable only in
admiralty, but the remedy is within the jurisdiction of the state court,
and this rule applies to items furnished the vessel after she has been
launched, but which are really part of her original construction.

142 Michigan, 84, affirmed.

THESE cases may be considered together. They are writs
of error to the judgments of the Supreme Court of Michigan
affirming the decrees of the Circuit Court of Wayne County,
Michigan, enforcing liens for the De Laney Forge and Iron
Company, defendant in error, in 218, and George W. Edwards
and others, defendants in error in 219, and intervenors in the
original case.

The *Winnebago*, a steel steamer of 1,091 tons burthen, was
built by the Columbia Iron works, at St. Clair, Michigan.
The contract price was $95,000; date of contract, March 8,
1902; between the Columbia Iron Works and John J. Boland
and Thomas J. Prindeville. It was understood that these
persons should organize a corporation to be known as the
Iroquois Transportation Company. The contract price was
to be paid, $31,000 in cash, from time to time; for the balance
the transportation company was to execute its notes to the
amount of $16,000, to issue bonds for $48,000, to be secured
by mortgage upon its property. On April 5, 1902, Boland
and Prindeville assigned the contract to the Iroquois Trans-
portation Company. Payments were made on the contract
as follows: $7,500, at date of signing contract; $7,500, April 3,
1902; $4,000, April 14, 1902; $4,000, June 15, 1902; $4,000,
July 15, 1902.

An additional $4,000 was paid on October 3, 1902, and two
negotiable notes of $4,000 given, maturing respectively Novem-
ber 1, 1903, and November 1, 1904.

The steamer was launched March 21, 1903. After she was
in the water the work on the contract continued. On July 18,
1903, she was inspected, measured, enrolled and licensed to

be employed in domestic and foreign trade. This license was issued in the name of the Columbia Iron Works as owner.

On July 19, 1903, the Iroquois Transportation Company received a bill of sale of the steamer and delivered to the Columbia Iron Works ninety-six negotiable bonds of $500 each, secured by mortgage on the steamer, and paid the balance of the purchase money, which was to be paid in cash, then amounting to between $400 and $500.

The agreement recited that possession was given to the Iroquois Transportation Company for the purpose of completing and finishing up those things still remaining undone on the steamer and required to be done by the iron works by the terms of the contract for the construction of the steamer, "it being the sole intent and purpose of this agreement to enable the Iroquois Transportation Company to obtain immediate possession of the steamer, and without intending either to limit the extent of the obligation of said Columbia Iron Works under the original specifications."

The steamer left St. Clair for Lorain, Ohio, July 19, 1903. At that time she was not completed, and workmen remained on her and went with her to St. Clair, where additional work was done upon her. She was afterwards engaged in carrying cargoes between points on Lake Erie and Lake Superior.

On July 30, 1903, the Columbia Iron Works made an assignment for the benefit of creditors. On August 25, 1903, the De Laney Forge and Iron Company served notice on the Iroquois Transportation Company that it made a claim of lien against the steamer for forging and material furnished; and on October 6, 1903, complaint was filed in the Circuit Court of Wayne County, Michigan, and shortly thereafter Edwards and others intervened in the case, claiming a lien. The Iroquois Company gave a bond under the statute for the release of the vessel. Decrees were rendered in favor of the claimants and intervenors in the Circuit Court of Wayne County, and upon appeal they were affirmed in the Supreme Court of Michigan. 142 Michigan, 84.

*Mr. Charles E. Kremer,* with whom *Mr. William T. Gray* was on the brief, for plaintiff in error:

The *Winnebago* was, at the time of her seizure, not used or intended to be used in navigating the waters and canals of this State. *Sauter* v. *The Sea Witch,* 1 California, 162; *Tucker* v. *Sacramento,* 1 California, 403; *Ray* v. *Henry Harbeck,* 1 California, 451; *Haytien Republic,* 65 Fed. Rep. 120.

A proceeding under the statutes of Michigan against a vessel which has already been enrolled and licensed under the laws of the United States, and at the time of the seizure was actually engaged in interstate commerce, is unconstitutional and void because in conflict with the Constitution and laws of the United States. *The Glide,* 167 U. S. 606; *Johnson* v. *Elevator Company,* 119 U. S. 397; *White's Bank* v. *Smith,* 7 Wall. 646; *The Menominee,* 36 Fed. Rep. 197; *Perry* v. *Haynes,* 191 U. S. 17; *The Edith,* Fed. Case 4283; *S. C.,* 11 Blatchf. 451; *The Edith,* 94 U. S. 519; *Moir* v. *The Dubuque,* Fed. Case 9696; *The Roanoke,* 189 U. S. 185.

The *Winnebago,* engaged in interstate commerce, was not subject to seizure while passing from port to port through the waters within the jurisdiction of the courts of the State of Michigan. *Mich. C. R. Co.* v. *Chicago M. L. S. Co.,* 1 Ill. App. 339; *Wall* v. *Norfolk & W. R. Co.,* 52 W. Va. 485; *Connery* v. *Quincy O. & K. C. R. Co.,* 99 N. W. Rep. 365.

The contract to build a ship is a maritime contract and therefore there is a lien for material and labor furnished which can be enforced in a court of admiralty, there being a lien under the state law. *People's Ferry Co.* v. *Beers,* 20 How. 383; *Roach* v. *Chapman,* 22 How. 129; *J. E. Rumbell,* 148 U. S. 1; *Davis* v. *New Brig,* Fed. Cas. 3643; *Read* v. *Hull of a New Brig,* Fed. Cas. 11,609; *The Calisto,* Fed. Cas. 2316; *The Hull of a New Ship,* Fed. Cas. 6859; *Van Pelt* v. *The Ohio,* Fed. Cas. 16,870; *The Abbie Whitman,* Fed. Cas. 15; *Sewall* v. *The Hull of a New Ship,* Fed. Cas. 12,682; *Purington* v. *The Hull of a New Ship,* Fed. Cas. 11,478; *The Richard Busteed,* Fed. Cas. 11,764; *Drew* v. *The Hull of a New Ship,* Fed. Cas. 4078; *The*

*Chas. Mears,* Fed. Cas. 10,766; *N. J. Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 378; Benedict's Admiralty, 2d ed., § 264; *De Lovio* v. *Boit,* 2 Gall. 475; *Insurance Co.* v. *Dunham,* 11 Wall. 10; 2 Parsons on Ship. and Adm. 327; *Dupont De Nemours* v. *Vance,* 19 How. 162; *The Grape Shot,* 9 Wall. 129; *The Guy,* 9 Wall. 758; *The Lulu,* 10 Wall. 192; *The General Custer,* 10 Wall. 204; *The Patapsco,* 13 Wall. 329; *The Robert Parsons,* 191 U. S. 17; *The Blackheath,* 195 U. S. 361; *The Magnolia,* 20 How. 296, 307.

*Mr. Herbert K. Oakes,* with whom *Mr. John C. Shaw, Mr. Charles B. Warren, Mr. William B. Cady, Mr. Joseph G. Hamblen, Jr.,* and *Mr. Hugh Shepherd* were on the brief, for defendant in error:

The proceeding here does not trench upon the exclusive jurisdiction of the Federal courts in admiralty cases. *The Glide,* 167 U. S. 606 and *Perry* v. *Haynes (The Robert W. Parsons),* 191 U. S. 17, distinguished.

Even if the Michigan statute is unconstitutional in some respects, it is constitutional and valid, insofar as it relates to the claims in controversy here, and the part being dealt with in this controversy is not so related in substance, and the provisions are not so interdependent that one cannot operate without the other. Under such circumstances, the part that is 'constitutional' will, under all the authorities, stand. 6 Am. & Eng. Ency. of Law, 2d ed., p. 1088, and cases cited; *Keokuk Co.* v. *Keokuk,* 95 U. S. 80; *Unity* v. *Burrage,* 103 U. S. 447–459.

So long as the materials furnished were to be used as part of the original construction of the ship, the admiralty will not take cognizance of them. *The Iosco,* Bro. Adm. 495; *S. C.,* Fed. Cas. 7060; *The Victorian,* 24 Oregon, 121, 132–135.

Even if there had been seizure in this case, and if it were shown that the *Winnebago* was engaged in interstate commerce at the time appearance was asked or service accepted, the whole trend of judicial authority, as evidenced by the references

above made, is to the effect that the State here had complete power to make and enforce the law here made and enforced, insofar as it relates to the non-maritime matter here under discussion, and that its enforcement is not a regulation of commerce. *Smith* v. *Maryland*, 18 How. 71, 74; *Johnson* v. *Elevator Co.*, 119 U. S. 388, 398; *Cannon* v. *New Orleans*, 20 Wall. 577, 582; *Packet Co.* v. *Catlettsburg*, 105 U. S. 559; *Trans. Co.* v. *Parkersburg*, 107 U. S. 691.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Michigan statute, under which the liens are claimed in this case, is as follows:

"Third Compiled Laws of Michigan, p. 3254:

" (10789) Sec. 2. Every water craft of above five tons burthen, used or intended to be used, in navigating the waters of this State, shall be subject to a lien thereon:

"First, for all debts contracted by the owner or part owner, master, clerk, agent or steward of such craft, on account of supplies and provisions furnished for the use of said water craft, on account of work done or services rendered, on board of such craft, by seamen, or any employé, other than the master thereof; on account of work done or service rendered by any person in or about the loading or unloading of said water craft; on account of work done or materials furnished by mechanics, tradesmen, or others, in or about the building, repairing, fitting, furnishing or equipping such craft: *Provided*, That when labor shall be performed or materials furnished, as aforesaid, by a subcontractor or workman other than an original contractor, and the same is not paid for, said person or persons may give the owner or his agent, or the master or clerk of said craft, timely notice of his or their said claim, and from thenceforth said person or persons shall have a lien upon said craft *pro rata* for his or their said claims, to the amount that may be due by said owner of said original contractor for work or labor then done on said water craft."

Several objections are urged by the plaintiff in error which, if sustained, will result in the reversal of the judgments of the Supreme Court of Michigan. Some of them are of a non-Federal character. It is insisted that the statute does not apply in this case, because the steamer *Winnebago* was not to be used in navigating the waters of Michigan, within the terms of the statute. But this only presents a question of state law, upon which the judgment of the state court is final and conclusive. The same may be said as to the objection because the transportation company was a *bona fide* purchaser without notice of complainant's lien; and because complainant did not within a year file its claim for a lien with the proper court in the county in which it resided. These are state questions, likewise concluded by the decision of the state court.

It is further contended that to seize the vessel and subject her to sale and the proceeds thereof to distribution in the state court would be in direct conflict with the exclusive jurisdiction in admiralty in the courts of the United States in favor of liens of a maritime character, and therefore the Michigan act is unconstitutional. No maritime lien is asserted in this case, and it is merely a matter of speculation as to whether any such claim existed, or might be thereafter asserted. No holder of any such maritime lien is here contesting the constitutionality of the state law.

In a case from a state court, this court does not listen to objections of those who do not come within the class whose constitutional rights are alleged to be invaded; or hold a law unconstitutional because, as against the class making no complaint, the law might be so held. This was distinctly ruled in a case decided at this term. *New York ex rel. Hatch* v. *Reardon,* 204 U. S. 152. See also *Supervisor* v. *Stanley,* 105 U. S. 305–311; *Lampasas* v. *Bell,* 180 U. S. 276, 283, 284; *Clark* v. *Kansas City,* 176 U. S. 114–118; *Cronin* v. *Adams,* 192 U. S. 108–114.

There is no one in position in this case to make this objection, and, for aught that this record discloses, no such maritime

lien existed. If this statue is broad enough to include strictly maritime liens, it can only be held unconstitutional, in a case coming from a state court, where the complaint on that ground is made by the holder of such a demand. We agree with Judge Severens, speaking for the Circuit Court of Appeals for the Sixth Circuit, in a case directly involving this question, where other claimants upon the *Winnebago* had removed a case to the United States Circuit Court for the Eastern District of Michigan, whence it was taken to the Circuit Court of Appeals:

"And the fact that she [the *Winnebago*] might become subject to maritime liens would not destroy liens already lawfully acquired. It is true she might become subject to maritime liens which would be superior to the existing lien, and that such liens would have to be enforced in the admiralty. But that possibility does not defeat the enforcement by the state court of the non-maritime lien to which she is subject. How else is the owner of the latter to obtain his remedy? It may be the vessel will never become subject to maritime liens at all; and, if so, the holder of the existing lien may never have even the privilege of proving his claim in some cause instituted for another purpose, but no such supposed embarrassment has yet occurred. And they are as yet imaginary. But suppose such other liens should attach. That should not prevent the enforcement of the earlier lien in the proper court. If the holder of the earlier lien delays his action, he subjects himself to the danger of superior liens becoming fastened, and the enforcement of his own lien in the state court must leave the vessel subject to the superior liens of which the state court cannot take cognizance. If occasion requires, and the admiralty court enforces the superior liens, it is in no wise obstructed by the action of the state court, and a title under a decree of the former court would defeat the title gained under the decree of the state court. The case of *Moran* v. *Sturgis*, 154 U. S. 256 is a good illustration of this subject. There is no difficulty other than such as may happen in case one court should take and have possession of the vessel at a time when the other

should require it; but that is an incident common along all the lines of concurrent proceedings in the state and Federal courts, and gives no ground for the denial of jurisdiction to either." *The Winnebago*, 73 C. C. A. 295.

It is next insisted that the materials and supplies were not furnished on the credit of the vessel, but were contracted for, furnished and delivered on the credit of the Columbia Iron Works.

The findings upon this proposition are again questions within the exclusive jurisdiction of the state court. The findings will not be disturbed here.

It is next objected that the court erred because certain items were allowed for material furnished the vessel after she was launched, and therefore the subject of exclusive jurisdiction for which a lien could only be enforced in the admiralty. But we agree with the state court that these items were really furnished for the completion of the vessel and were fairly a part of her original construction. In such a case the remedy was within the jurisdiction of the state court. *The Iosco*, Fed. Cas. 7060; *The Victorian*, 24 Oregon, 121; *The Winnebago*, 73 C. C. A. 295.

It is urged that the attempt to enforce the lien on the vessel was while she was engaged in interstate commerce, and therefore proceedings against her were unlawful and void, in view of the exclusive control of this subject by Congress under the Constitution and laws of the United States. But it must be remembered that concerning contracts not maritime in their nature, the State has authority to make laws and enforce liens, and it is no valid objection that the enforcement of such laws may prevent or obstruct the prosecution of a voyage of an interstate character. The laws of the States enforcing attachment and execution in cases cognizable in state courts have been sustained and upheld. *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388–398. The State may pass laws enforcing the rights of its citizens which affect interstate commerce but fall short of regulating such commerce in the sense

in which the Constitution gives exclusive jurisdiction to Congress. *Sherlock et al.* v. *Alling*, 93 U. S. 99, 103; *Kidd* v. *Pearson*, 128 U. S. 1, 23; *Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477.

Upon the subject, Mr. Justice Brown, speaking for the court in *Knapp* v. *McCaffery*, 177 U. S. 638–642, said:

"That wherever any lien is given by a state statute for a cause of action cognizable in admiralty, either *in rem* or *in personam*, proceedings *in rem* to enforce such lien are within the exclusive jurisdiction of the admiralty courts.

"But the converse of this proposition is equally true, that if a lien upon a vessel be created for a claim over which a court of admiralty has no jurisdiction in any form, such lien may be enforced in the courts of the State. Thus, as the admiralty jurisdiction does not extend to a contract for building a vessel, or to work done or materials furnished in the construction (*The Jefferson, People's Ferry Co.* v. *Beers*, 20 How. 393; *The Capitol, Roach* v. *Chapman*, 22 How. 129), we held in *Edwards* v. *Elliott*, 21 Wall. 532, that in respect to such contracts it was competent for the States to enact such laws as their legislatures might deem just and expedient, and to provide for their enforcement *in rem.*"

The contract in this case being for the construction of a vessel, and its enforcement within the power and jurisdiction of the state courts, we do not think that execution of such a decree can be avoided because the vessel engaged in interstate commerce.

Finally, an elaborate and able argument is made in support of the contention that a contract to build a ship is a maritime contract, and therefore can be enforced only in admiralty, but as late as this term, in *Graham* v. *Morton Transportation Company*, this contention was overruled upon the authority of the previous decisions of this court. 203 U. S. 577.

The judgments of the Supreme Court of Michigan are

*Affirmed.*