### THE UNITED SHORES.

(District Court, W. D. New York. February 21, 1912.)

1. MARITIME LIENS (§ 25*)—LIFE-SAVING APPARATUS.

A maritime lien does not exist for lifeboats, life rafts, life preservers, and releasing hooks for lifeboats, furnished for the equipment of a passenger steamer as required by law, although such articles were furnished subsequent to her launching.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 31–36; Dec. Dig. § 25.*]

2. MARITIME LIENS (§ 25*)—LIFE-SAVING APPARATUS.

Section 1 of the maritime lien law (Act June 23, 1910, c. 373, 36 Stat. 604), which provides that any person furnishing repairs, supplies, or other necessaries to a vessel on order of the owner shall have a maritime lien, which may be enforced by a proceeding in rem, does not create such a lien for life-saving apparatus furnished a passenger steamer, which was a part of her original equipment and essential to her completion.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 31–36; Dec. Dig. § 25.*]

3. MARITIME LIENS (§ 17*)—STATUTES—SCOPE.

Section 5 of the maritime lien law (Act June 23, 1910, c. 373, 36 Stat. 605), which supersedes state statutes for liens for supplies and other necessaries, does not enlarge the scope of the act, which is limited to maritime liens arising out of contracts for supplies or other necessaries furnished to vessels already completed in structure and equipment to transact the business for which they were built.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20, 22; Dec. Dig. § 17.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceeding in rem against the steamer United Shores to enforce a maritime lien. Libel dismissed.

Foley & Martin, for libelants.
Kimball & Stowe, for claimant.

HAZEL, District Judge. This is a proceeding in rem against the passenger steamer United Shores to enforce a maritime lien for the purchase price of certain lifeboats, life rafts, life preservers, and releasing hooks for lifeboats. The articles were sold at the instance and request of the Empire Shipbuilding Company, which was engaged in building the steamer at her home port, Buffalo, N. Y., for the Buffalo & Ft. Erie Ferry & Railway Company. After the steamer was launched on June 8, 1911, and before she was completed, the materials were shipped and delivered to her, a part in June, and the remainder early in July. Her inspection by United States inspectors occurred in August, when she received a temporary certificate of inspection pursuant to section 4421 of the Revised Statutes (U. S. Comp. St. 1901, p. 3027), permitting her to engage in navigation and the transportation of passengers; and later on, in September, she was redelivered to the building company for final completion.

[1] The statute provides that vessels carrying passengers shall be equipped with such of the above-specified life-saving apparatus as the inspector may deem necessary to conserve the safety of all persons on board in case of disaster. The libelants claim, however, that while the articles furnished constituted supplies and equipment of a specified class, the use of which was made necessary by law, they were no part of the actual construction of the vessel, as were her engines, hull, boiler, etc.; that they were not essential to the completion of the vessel, as that term is commonly understood; and that therefore a maritime lien for such life-saving appliances exists. But I think that such articles were a part of her original equipment and essential to her completion. She was not a fully equipped or completed vessel without them, since her practicability, or at least her right to navigate and carry passengers, required that she be provided with such life-saving apparatus to fit her for her intended purpose. American & English Encyc. of Law, vol. 19, p. 1902; Benedict's Admiralty (4th Ed.) § 183. Without it she was an incompleted vessel and outside of the admiralty jurisdiction of this court. Roach et al. v. Chapman et al., 22 How. 129, 16 L. Ed. 294; Edwards v. Elliott et al., 21 Wall. 532, 22 L. Ed. 487; In re Glenmont (D. C.) 32 Fed. 703. And it is not of material importance that the supplies were furnished by the libelants subsequent to launching the steamer. The Winnebago, 205 U. S. 354, 27 Sup. Ct. 509, 51 L. Ed. 836; The Paradox (D. C.) 61 Fed. 860.

In the Glenmont, supra, articles such as tiller lines, fuel, copper wire, deck line, bedding, etc., were furnished to enable a vessel to proceed on her voyage, and the question arose whether a maritime lien or contract existed for the sale of such articles. The court held substantially that the single question was whether such supplies or materials were part of the original contract to build the vessel and

make her "serviceable for the navigation contemplated"; and as the original construction of the boat contemplated as such all the materials mentioned, no maritime lien existed, and the federal court was without jurisdiction. That this rule has been universally recognized and followed the cases already cited show. So, in this case, it was necessary that the United Shores should have aboard the articles furnished by libelants to make her serviceable for the purpose for which she was built.

[2] The libelants, however, contend that the maritime lien law passed June 23, 1910, modifies and changes the rule of law to which we have referred. By section 1 it is substantially provided that any person furnishing repairs, supplies, or other necessaries to a vessel, whether foreign or domestic, upon the order of the owner, shall have a maritime lien, which may be enforced by a proceeding in rem. But in my opinion Congress, by this provision, did not intend to give to this court, sitting in admiralty, jurisdiction of a subject which is not solely of maritime origin. There is nothing contained in the act to lead one to think that Congress intended to change the law that a vessel is completed only when she is fully equipped to engage in navigation and commerce; and it is thought that the terms "supplies" and "other necessaries" refer to fuel and such furnishings generally as are of use after a vessel is completed and fit to proceed on a trip or voyage.

[3] The libelants further contend that by section 5 of the act a state lien for the materials in question is barred and the state statutes for liens for supplies and other necessaries superseded. The answer to this contention is that the section does not enlarge the scope of the act, which, as said, is limited to maritime liens arising out of contracts for supplies or other necessaries furnished to vessels already completed in structure and equipment to transact the business for which they were built.

The facts of the present case do not disclose a maritime lien for the articles furnished by libelants, and therefore the libel is dismissed.