STATE *vs.* ROSCOE C. LEARY, alias.

JULY 11, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

RATHBUN, J.   This action was commenced in the District Court of the Sixth Judicial District by a criminal complaint charging the defendant with hindering and obstructing the smoke inspector of the city of Providence in the performance of his duties in violation of Section 4, Chapter 807 of the Public Laws of 1912.   Said section is as follows: "Sec. 4. The smoke inspector and his deputies shall each have authority in the performance of their duties during the daytime to enter any building or place where any stack affected by the provisions of this act, or any engine, steam boiler, furnace, smoke preventive or furnace fire used in connection therewith, shall be located, and to inspect and supervise any and all the same, and the igniting, making, feeding, stoking and attending any such furnace, smoke preventive and furnace fire, and any person hindering or obstructing any of the same in the performance of his duty, shall be fined not less than twenty dollars, nor more than fifty dollars,

for each such offence." At the time of the commission of the acts complained of the defendant was a civilian engineer in charge of a dredge located in Providence Harbor and owned by a private corporation which was, pursuant to the terms of a contract between said corporation and the War Department of the United States, engaged, under the supervision of a United States district engineer, in dredging out the channel of the navigable tidal waters of Providence Harbor. Said inspector was prevented by the defendant in the daytime from going aboard said dredge for the purpose of inspecting the smokestack, engine, steam boiler, furnace, smoke preventive and furnace fire located thereon and supervising the use of said apparatus. At the trial in the district court, after the State had proved the allegations in the complaint, the defendant moved that the complaint be dismissed. In support of his motion the defendant made the following contentions: (1) that, "in so far as Chapter 807 of the Public Laws of 1912 of this State attempts to regulate the operation of said dredge within and on the navigable and tidal waters of the Providence Harbor, so called, it is in conflict with Section 8 of Article 1 of the Constitution of the United States, wherein it is provided that 'Congress shall have power . . . to regulate commerce with foreign nations and among the several States', and is to that extent null and void." (2) That in so far as said chapter "attempts to regulate the operation of said dredge within and on the navigable and tidal waters of the Providence Harbor, so called, and while acting under and by virtue of a contract between its owner and the War Department of the United States Government for the dredging of said harbor, and in so far as the said Chapter 807 attempts to give jurisdiction to the courts of this State over said dredge, while being operated in accordance with said contract, it is in conflict with Section 2 of Article III of the Constitution of the United States providing that the judicial power of the courts of the United States shall extend 'to all cases of admiralty and maritime jurisdiction', and is to that extent null and void."

The motion to dismiss was denied and the defendant was adjudged guilty. Further proceedings were then stayed and the record of the case was certified to this court for a determination of the constitutional questions raised by the motion to dismiss. Section 8, Article I of the United States Constitution provides that, "The congress shall have power: — . . . . To regulate commerce with foreign nations and among the several states." Section 2 of Article III of said Constitution provides that, "The judicial power shall extend . . . . to all cases of admiralty and maritime jurisdiction."

The defendant contends that Section 4 of said Chapter 807 provides for a regulation of commerce in violation of said provisions of Section 8, Article I of the United States Constitution because said Section 4 assumes to authorize an inspection of the boilers on a vessel which boilers are subject to Federal inspection.

The statute complained of was enacted in pursuance of the police power, a domain which is reserved to the States and denied to the United States Government, and the act is not invalid unless it, in some way, infringes some right secured to the National Government by the Federal Constitution. *Keller* v. *United States*, 213 U. S. 138, 16 Ann. Cas. 1066. The defendant admits that the regulation attempted is not over a subject, national in character, requiring uniformity of regulation because affecting all states alike and hence exclusively within the domain of the Federal Government, (See *County of Mobile* v. *Kimball*, 102 U. S. 691) but that the subject is local in character and is open to State legislation, unless the Federal Government, by congressional legislation covering the field has acted. See *Escanaba Co.* v. *Chicago*, 107 U. S. 678.

Congress has provided, merely as a safety measure, a system for the compulsory inspection of boilers but the National Government has made no regulation for the purpose of preventing or sanctioning a smoke nuisance in the navigable tidal waters which are a part of and subject to

the jurisdiction of a state. It would be difficult to frame a satisfactory general regulation of the subject, applicable alike to all the various navigable waters within the separate states. There is very little, if any, necessity for regulation of the subject in a large part of the navigable waters of many states but the need of regulation in a small harbor located in the center of a thickly settled community is as great as on the land. In the absence of action by the National Government to the contrary a state may within and over the navigable waters subject to its jurisdiction, do many things which not only regulate but impede navigation. Until Congress acts a state may authorize the construction and maintenance of a bridge over navigable waters within the state and may regulate the opening and closing of the draw and the speed of vessels in passing through the draw. *Escanaba Co.* v. *Chicago, supra.* Quarantine laws and laws and regulations governing pilots and pilotage have been left for state regulation. *Compagnie Francaise, &c.* v. *Louisiana,* 186 U. S. 380; *Louisiana* v. *Texas,* 176 U. S. 1; *Olsen* v. *Smith,* 195 U. S. 332; *Anderson* v. *Pacific Coast S. S. Co.,* 225 U. S. 187. In suits to enforce non-maritime contracts where the plaintiff was seeking a judgment *in personam* the State laws enforcing attachments and executions upon a sea-going vessel have been sustained, although a voyage was interrupted or prevented, (*The Winnebago,* 205 U. S. 354), as also have state laws authorizing an attachment of a vessel in a tort action to recover for damage caused to property on the land by the negligent management of the vessel. *Johnson* v. *Chicago, &c. Elevator Co.,* 119 U. S. 388. In *Sherlock et al.* v. *Alling,* 93 U. S. at 103, FIELD, J. speaking for the court said: "In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within

the meaning of the Constitution. . . . And it may be said, generally, that the legislation of a State, not directed against commerce or any of its regulations, but relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or inter-State, or in any other pursuit."

The statute in question was not aimed at navigation. The language is general and applies equally to persons and property whether on the land or water within the State. The smoke inspector would not assume to interfere with the firing of the boilers on the dredge; at the most he would offer advice and suggestions as to equipment, and methods of firing, and observe whether the statute was being complied with. Most of the statutes which have been held void because of interference with the commercial power of Congress have imposed some tax or required a license as a condition of carrying on of trade or commerce. See *Brown* v. *Maryland*, 12 Wheaton 425; *State Tonnage Tax Cases*, 12 Wall. 204; *Welton* v. *Missouri*, 91 U. S. 275. The Federal Government has determined where the dredging shall be done, how the work shall be done, and the extent of the work to be performed. The State does not desire and has not in any way attempted to modify or interfere with the plans for this work. In *Wisconsin* v. *Duluth*, 96 U. S. 379, cited by the defendant, the plaintiff desired to change the plans adopted by the Federal Government for the improvement of navigable waters. The statute complained of does not assume to regulate commerce; it imposes no tax or duty and in no respect interferes with any Federal regulation for the navigation and use of vessels.

The enforcement against the defendant of the statute in question does not interfere with the admiralty and maritime jurisdiction of the courts of the United States in violation of Section 2, Article III of the Federal Constitution.

Congress, in the exercise of the power conferred upon the Federa Government by the Constitution, has defined the territorial jurisdiction of the courts of the United States over criminal offences by adopting a criminal code (see 10445, U. S. Comp. Statutes 1916) as follows: "The crimes and offenses defined in this chapter shall be punished as herein prescribed: First. When committed upon the high seas, or on any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State, or when committed within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State on board any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or of any State, Territory, or District thereof." The above code limits the criminal jurisdiction of Federal courts over waters to such waters as are not within the territorial limits of a State. See *Commonwealth* v. *Peters*, 12 Met. 387. In *Manchester* v. *Massachusetts*, 139 U. S. 240, a conviction for a violation in Buzzard's Bay of the State Fisheries Law was sustained. In *United States* v *Bevans*, 3 Wheat. 336, it was held that the Massachusetts court had jurisdiction of the crime of murder committed on board of a United States Ship of War lying at anchor in Boston Harbor by an enlisted marine who was acting as sentry at the time the murder was committed. In the opinion by MARSHALL, C. J. is the following statement: "To bring the offence within the jurisdiction of the courts of the Union, it must have been committed in a river, &c., out of the jurisdiction of any state. It is not the offence committed, but the bay in which it is committed which must be out of the jurisdiction of the state. If, then, it should be true, that Massachusetts can take no cognizance of the offence; yet, unless the place itself be out of her jurisdiction, congress has not given cognizance of that offence to its courts. If there be a common jurisdiction, the crime cannot be punished in the courts of the Union." In *New*

*Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 How. at 390 it was stated as follows: "The common law courts exercise a concurrent jurisdiction in nearly all the cases of admiralty cognizance, whether of tort or contract, (with the exception of proceedings in rem), . . ." In *American Steamboat Co.* v. *Chase* 83 U. S 522, it appears that a steamboat, owned and operated by the American Steamboat Company, a common carrier, operating between Providence and Newport negligently caused the death of one George Cook by colliding with the sail boat in which he was crossing Narragansett Bay. The administrator of said Cook brought suit against the steamboat company in one of the courts of this State to recover damages for the loss of Cook's life and obtained a verdict which was sustained by this court. The case was taken on writ of error to the United States Supreme Court where it was urged that the State court was without jurisdiction. The action could not have been maintained in the United States District Court because Congress had passed no act giving a right of action for death caused by negligence. It was held that the Rhode Island statute, without which the action would not have survived for the benefit of the next of kin, did not interfere with the admiralty jurisdiction of the District Court of the United States as conferred by the Constitution and the Judiciary Act of 1789. It was not even suggested that the enforcement of the Rhode Island statute infringed upon the commercial power of Congress. The court said: "Where the suit is *in rem* against the thing, the original jurisdiction is exclusive in the District Courts, . . . but when the suit is *in personam* against the owner, the party seeking redress may proceed by libel in the District Court, . . . or in a State court as in other cases of actions cognizable in State and Federal courts . . . ."

Our decision is that Section 4 of Chapter 807 of Public Law of 1912 is not in violation of either Section 8, Article I or Section 2, Article III of the Constitution of the United States.

The papers in the case are sent back to the District Court of the Sixth Judicial District, with the decision of this court certified thereon, for further proceedings.

*Elmer S. Chace, City Solicitor, Henry C. Cram, Assistant City Solicitor, Sigmund W. Fischer, Jr., Assistant City Solicitor,* for State.

*Gardner, Moss & Haslam,* for defendant. *Charles R. Haslam,* of counsel.