# BALTIMORE CITY COURT.

Filed September 18, 1924.

## IN RE MOTIONS TO QUASH IN THE ATLANTIC COAST LINE AND SOUTHERN RAILROAD CASES.

*Arthur W. Machen, Jr.,* and *John H. Lewin* for the Atlantic Coast Line.

*Joseph Addison* for the Southern Railroad.

*L. Wethered Barroll* and *Richard C. Bernard* for the plaintiffs.

STEIN, J.—

There are eleven of these suits; each brought under the "Carmack Amendment," to recover damages for "failure to keep a contract for the safe delivery of freight." In ten, the Atlantic Coast Line, the "initial carrier," is sued jointly, with the connecting and terminal carrier; in the other, the "Southern Railway" the "initial carrier" is the sole defendant.

Each is a foreign corporation, incorporated under the laws of the State of Virginia, as a common carrier, to engage in intra and interstate freight and passenger traffic. Neither has any line or railroad tracks in Maryland.

The cause of action in each suit, is based on a "contract of freight" for an interstate commerce shipment; the contract was not entered into in the State

of Maryland; but was entered into in another State, in the course of the carrier's "interstate commerce" business.

Each, above named defendant, specially appeared in each case by counsel, and filed a motion to quash the writ of summons because:

A. Each is a foreign corporation, whose sole business in Maryland, is the solicitation of freight and passenger traffic in interstate commerce business; which business the Supreme Court of the United States under the "due process" clause of the Federal Constitution, holds does not make the carrier "so present" in Maryland, as to give the *Courts* of that State *jurisdiction over* it in a suit to enforce personal liability.

B. That, if under the Maryland statutes authorizing suits against foreign corporations, doing business therein, each carrier is "so present" as to subject it to these suits; yet they cannot be maintained, because the bringing of each in Maryland is an "undue burden" on interstate commerce under the Davis case, 262 U. S. 312, &c. And, if they authorize the bringing of these suits the Maryland statutes conflict with the "Commerce Clause of the Federal Constitution" and to that extent are invalid.

These are Federal questions. Perhaps the Supreme Court of the United States could be called upon to review the decisions of the State Courts therein; which review, if made, would extend to "findings of facts as well as to conclusions of law;" McKibbins' Case, 243 U. S. 264 at 265.

The motions were heard together, upon the following record, viz.: (a) The affidavit of one of the plaintiffs; (b) several agreed statements of facts; (c) the oral testimony of Mr. Wardin, the officer of the Atlantic Coast Line, upon whom summons was served in each case against it; and (d) the official timetable each carrier issues and distributes to the public in Maryland and elsewhere.

From that record I find: Each carrier is a foreign corporation, engaged in interstate commerce, without any line or tracks in Maryland; that the cars of each run over other lines in Maryland —either for discharge therein or to pass through; that each carrier maintains an office in the City of Baltimore, in charge of its officers, employed to solicit freight and passenger traffic

over its lines in other States; each carrier, in some way, is subject to taxation in Maryland. While from the above and the other facts in this record, the inference could be drawn that each corporation was and is engaged in the doing of other kinds of business in Maryland, yet this opinion will accept counsels' contention, that each carrier's business in Maryland was and is the solicitation therein of "interstate commerce" freight and passenger traffic in other States.

The question under the due process clause is a difficult one—due to two (at times conflicting) views, upon which State jurisdiction over foreign corporations is based. Starting from the common principle that a corporation cannot "migrate," came two modifications:

(1) If a State statute conditions the transaction of business within its borders (e. g., as to amenability to suit) such conditions, so far as reasonable, will be upheld. This, at times, is called the "implied assent" theory; and has been applied to insurance companies (Lafayette Insurance Company vs. French, 18 Howard (U. S.) 404); as well as to corporations "exclusively engaged in interstate commerce." (International Harvester Company vs. Kentucky, 234 U. S. 579).

(2) The other theory, logically unconnected with State statutes, treats a foreign corporation as "actually present" by its representatives, if it habitually carries on some part of its business in the State. This theory has been applied by the Supreme Court, which from a series of suits against carriers (mostly for personal injuries) brought in States where the carrier had no line and usually by non-residents — has evolved a somewhat narrow view of what constitutes doing business; has disposed of plaintiffs with the "due process clause"; has announced always that doing business is a question of degree; incapable of any "all embracing" rule; that each case must stand on its own facts (St. Louis vs. Alexander, 227 U. S. 218): and that the mere maintenance within a State, by a foreign carrier, of a traffic solicitation and promotion bureau, is not sufficient to make such a carrier, so personally present, as to be liable to suit to enforce personal liability.

In a recent case (P. & R. R. Co. vs. McKibbin, 243 U. S. 264-268) the Supreme Court (Brandeis J.), adopts both theories (italics supplied) as follows:

"A foreign corporation is amenable to process to enforce a personal liability *in the absence of consent*, only, if it is doing business within the State, in such a manner and to such an extent as to warrant the inference that it is present there. And even if it is doing business within the State, the process will be valid only if served upon some authorized agent. * * * Whether the corporation was doing business within the State and whether the person served was an authorized agent are questions vital to the jurisdiction of this Court. * * * Even hiring an office, the employment by a foreign railroad of a district freight and passenger agent to solicit and procure passengers and freight to be transported over the defendant's line, and having under his direction several clerks and various traveling passenger and freight agents (in Green vs. Chicago, 205 U. S. 530) was held not to constitute 'doing business' within the State. Nor would the fact, if established by competent evidence that subsidiary companies did business within the State, warrant a finding that the defendant did business there" (Peterson vs. Chicago, 205 U. S. 361).

In this case, evidence of doing business was of the slightest, and it made little difference which theory was applied.

The decisions are not easily reconcilable. In the Alexander case (supra) jurisdiction was upheld because the resident traffic agent had authority to settle claims.

In the Davis case (262 U. S. 312), brought to the Supreme Court on a writ of error from a Minnesota State Court, its last expression on that point, the Court refused to decide whether or not the service therein of the State Court violated the "due process" clause. Counsel for the plaintiff in error devoted the greatest part of his "brief and reply brief" to the point that the service of the State Court under the Minnesota statute was bad under the "due process clause."

The suit was brought under a Minnesota statute, that—"Any foreign corporation having an agent in this State for the solicitation of freight or passenger traffic or either thereof, over its lines outside of this State, may be

served with summons by delivery of a copy thereof to such agent" (262 U. S. 314).

The transaction giving rise to the suit "was in no way connected with Minnesota or with the soliciting agency located there." The Court said, at page 316:

"It may be that a *statute* like that here assailed would be valid, although applied to suits in which the cause of action arose elsewhere, if the transaction out of which it arose had been entered upon within the State, or if the plaintiff was, when it arose, a resident of the State. These questions are not before us and we express no opinion on them."

In Atlantic Coast Line vs. Riverside Mills, 219 U. S. at 200, as showing the reason for the adoption of the Carmack Amendment, the Supreme Court quoted with approval the following from Judge Richardson's address to Congress, in speaking for the Conference Committee, reporting that amendment, viz.:

"One of the great complaints of the railroads had been—and I think a reasonable, just and fair complaint—that when a man made a shipment, say from Washington, for instance, to San Francisco, California, and his shipment was lost in some way, the citizen had to go thousands of miles probably to institute his suit. The result was that he had to settle his damages at what he could get. What have we done? We have made the initial carrier, the carrier that takes and receives the shipment, responsible for the loss of the article in the way of damages, we save the shipper from going to California or some distant place to institute his suit— why? The reasons inducing us to do that were that the initial carrier has a through route connection with the secondary carrier, on whose route the loss occurred, and a settlement between them will be an easy matter, while the shipper would be at a heavy expense in the institution of a suit.

"If a judgment is obtained against the initial carrier, no doubt exists but that the secondary carrier will pay at once, why? Because the arrangement, the concert, the co-operation, the through route courtesies between them would be broken up." (40 Cong. Record, Pt. 10, 9580).

In Stewart's case, 143 Md. at 68, the Court of Appeals said:

"The provisions of the (Carmack) amendment had the effect of facilitating the remedy of the shipper by making the initial carrier responsible for the entire carriage, but the amendment was *not intended*, as we view it, to make foreign corporations through connecting carriers, liable to suit in a district where they *were not carrying on business in the sense which has heretofore been held necessary to confer jurisdiction*."

In Green's case (205 U. S. 530-534), the Supreme Court held, "That mere solicitation by a foreign carrier of freight and passenger traffic for 'interstate commerce' business, is not such 'doing business' as to make the soliciting carrier 'so present' that liability to service is incurred in that State." This suit originated in a Federal Court, in deciding it the Court said, at pp. 533-534:

"The question here is whether service upon the agent was sufficient; and one element of its sufficiency is whether the facts show that the defendant corporation was doing business within the district. It is obvious that the defendant was doing there a considerable business of a certain kind, although there was no carrying of freight or passengers. In support of his contention, that the defendant was doing business within the district in such a sense that it was liable to service there, the plaintiff cites Denver vs. Roller, 41 C. C. A. 22 and Tuchband vs. Chicago, 115 N. Y. 437.

"The facts in these cases were similar to those in the present case. But in both cases *the action was brought in the State Courts*, and the question was of the *interpretation* of a State statute and the jurisdiction of the State Courts. The business shown in this case was, in substance, *nothing more than that of solicitation*. Without undertaking to formulate any general rule defining what transactions will constitute doing business, in the sense that liability to service is incurred, we think that this is not enough to bring the defendant within the district so that process can be served upon it. This view accords with the several decisions in the lower Federal Courts."

This is the rule always applied by Federal Courts in suits originating in or removed to them; but never has been applied by the United States Supreme Court, in cases brought to it on

writ of error from a State Court, viz.: Reynolds' case, 255 U. S. 565, and Alexander's case in 227 U. S. 218.

Some State Courts apply it, viz: such as those of Rhode Island in Berger vs. P. R. R., 27 R. I. 583, and Alabama, in Abrams Bros. vs. Sou. Rwy., 149 Ala. 547

The Courts of other States, particularly those of Massachusetts and New York, do not apply it.

In the case of Missouri K. & T. R. Co. vs. Reynolds, 228 Mass. 584, affirmed in 255 U. S. 565, quoted with approval in the Davis case, supra, the Supreme Court did not apply the Federal Rule but affirmed the State Court, the jurisdiction of which was founded upon service like that condemned by the Federal Rule as not due process.

In the Alexander case (supra) the Supreme Court affirmed a decision of the Supreme Court of New York County—in discussing which in the Davis case, supra, 317, Justice Brandeis said:

"The case at bar resembles in its facts, but is not identical with, Missouri K. & T. R. Co. vs. Reynolds, 255 U. S. 565; and St. Louis S. W. R. Co. vs. Alexander, 227 U. S. 218. In the former the validity of a similar Massachusetts statute was sustained in a per curiam opinion. In the latter, jurisdiction was upheld in the absence of a statute concerning solicitation. But in both cases the only constitutional objection asserted was the violation of the due process clause. See Reynolds vs. Missouri, in 224 Mass. 379, and 228 Mass. 584. Since we hold that the Minnesota statute, as construed and applied, violates the commerce clause, we have no reason to consider whether it violates the 14th Amendment."

If the instant suits cannot be brought in Maryland. they must be brought in the Federal District in which each foreign carrier is incorporated.

Cleveland vs. Dittlebach, 239 U. S. 588; Southern vs. Prescott, 246 U. S. 632; Cincinnati vs. Rankin, 241 U. S. 319-327; Macon vs. Atlantic, 215 U. S. 501.

In the absence of a controlling decision of either the Supreme Court or of our Court of Appeals, I am unwilling to adopt a rule depriving the State Court of jurisdiction in these cases; particularly in view of the apparent refusal of the Court of Appeals in the Eichberg case, 107 Md. 363, to adopt the Federal rule. That the Courts of other States have done so, is not persuasive, not only because the Supreme Court has refused to pass on this question in the Davis case; and affirmed the State Courts in the Reynolds and Alexander cases (supra), the jurisdiction of each of which Courts was based upon service like that in the instant cases; but also because in addition to the above, in the Green case (supra), the Supreme Court recognized the difference between the Federal and State rules: and in Galveston vs. Wallace, 223 U. S. 481 at 490, in discussing the Carmack amendment said:

"And considering the relation between the Federal and State Government there is no presumption that Congress intended to prevent State Courts from exercising the general jurisdiction already possessed by them, and under which they had power to hear and determine causes of action created by Federal Statutes. * * *

"On the contrary, the absence of such provision would be construed as recognizing that where the cause of action was not penal but civil and transitory, it was subject to the principles governing that class of cases, and might be asserted in a State Court, as well as in those of the United States. This presumption is strengthened as to a statute like this passed not only for the purpose of giving a right, but of affording a convenient remedy."

To hold that under the "due process" clause each defendant carrier is not liable to suit in Maryland, in which State, under the Alexander case, supra, the cause of action accrued, and in which some of the plaintiffs reside and carry on business, would drive them to the bringing of a suit in the Federal District Court having jurisdiction in Virginia, the State in which the carriers reside, and by the adoption of such a rule then under the Maryland law, a citizen of this State with a cause of action accruing therein, in the language of Judge Richardson, could be forced "to bring suit a thousand miles away from the place of injury." Thus reviving that evil the Carmack Amendment was designed to cure. i. e., the affording the convenient remedy referred to in the Wallace case (supra).

The other question raised by the motion is that these suits cannot be maintained, because each is "an undue

burden on Interstate Commerce," citing the Davis case (supra). This recognizes but limits the "implied assent" theory.

Beginning with Sioux Ry. Co. vs. Cope (235 U. S. 197), emphasis is put on the unreasonableness of a statute requiring the foreign corporation to submit to suits by *anybody* on causes of action arising *anywhere*. This is elaborated in the Davis case, 262 U. S. 312.

The Interstate Commerce clause of the Constitution does not render all foreign corporations engaged in Interstate Commerce immune from the ordinary process of a State Court.

In the Harvester Case (supra) affirmed in the Davis case, the Supreme Court held:

"A foreign corporation engaged in 'Interstate Commerce' *only*, is not for that reason immune from the service of process under the laws of the State in which it is carrying on such business."

The immunity is against suits "which unduly burden Interstate Commerce" or "which impose a serious and unreasonable burden thereon."

In the Davis case (supra, 262 U. S. 312), Davis, as director-general of the Atchinson Ry. Co., the initial carrier, a Kansas corporation, with no line in Minnesota, was sued therein by another *Kansas corporation* on a *Kansas transaction*. The statute, set out above, provides that a solicitation of traffic within Minnesota should mean amenability to suit there by residents and non-residents on transactions local or foreign. The sole business in Minnesota of the railroad was the solicitation through a solicitation agency therein of freight and passenger traffic, on its line in other States. "The cause of action did not arise in Minnesota, and the transaction giving rise to the suit was in no way connected with that State, or within the soliciting agency located therein."

"The suit was one of a class, which in that State, on February 1, 1923, numbered 1,028; in which non-resident plaintiffs claimed damages to the total of $26,000,000 from foreign railroad corporations, which did not operate any line in Minnesota."

So that the suit deserved the condemnation of Mr. Justice Brandeis that it imposed a "serious and unreasonable burden on Interstate Commerce."

While the Davis case does not lay down a general rule as to what kind of suits "unduly burden Interstate Commerce," it holds that "orderly and effective administration of justice clearly does not require that a foreign carrier, *shall submit to a suit in a State in which the cause of action did not arise; in which the transaction giving rise to it was not entered upon; in which the carrier neither owns nor operates a railroad, and which the plaintiff does not reside.*" Ibid. 317. From which it follows, that among the suits which do not "unduly burden Interstate Commerce" are those:

(a) In which, the cause of action accrued in the State in which the suit is brought;

(b) In which, the transaction giving rise to such cause of action was entered upon in such State;

(c) In which the plaintiff resides.

In the Alexander case, the Court held (227 U. S. 326): "That the cause of action accrued in New York by failure to keep the contract for the safe delivery of goods there."

The plaintiffs in the instant cases are of the following classes, viz:

(1) Residents; where the cause of action accrued in Maryland; i. e. the breach of the contract for the safe delivery of goods there;

(2) Non-residents; where such cause of action accrued in Maryland;

(3) Non-residents; where neither the cause of action accrued in Maryland nor the transaction giving rise to it was entered into there;

(4) A resident, assignee, of a non-resident plaintiff; where such cause of action did not accrue in Maryland; and the transaction giving rise to it was not entered into there;

(5) A non-resident corporate plaintiff doing business in Maryland, in which State such cause of action accrued;

For the purpose of this decision, the activities of each foreign carrier may be taken substantially limited to the solicitation and promotion of Interstate Commerce traffic (agreed statements of facts, supra).

The Davis case holds that "solicitation of traffic by railroads in States

remote from their lines, is a recognized part of Interstate transportation." Notwithstanding the diversity between the Maryland and Federal laws as to what constitutes "doing business," the Supreme Court will uphold as reasonable (on the "implied assent" theory) the Maryland Statute (1 Bagby's Code, Art. 23, Sec. 412, p. 712), regulating jurisdiction over foreign corporations. This statute dates back to 1834 and has been recognized indirectly by the Supreme Court itself (see Henderson on Foreign Corps., p. 80, Sec. 412), and is as follows, viz:

"Any corporation not chartered by the laws of this State, which shall transact business therein, shall be deemed to hold and exercise franchises within this State, and shall be liable to suits in any of the Courts of this State on any dealings or transactions therein, and also shall be liable to suits in any of the Courts of this State, on any controversy which may arise between such corporations and any residents of this State."

This section limits to *Maryland plaintiffs and Maryland* transactions Sec. 92 of Art. 23, that "any person or corporation, whether resident or non-resident of this State, may sue any foreign corporation regularly doing business or regularly exercising any of its franchises herein for any cause of action." And thus limited is not in conflict with the commerce clause as construed in the Davis case (supra). Under the Carmack Amendment, the Baltimore destination made the transaction a Maryland one. The Alexander case (supra) holding that by the breach of the safe delivery in Baltimore "the cause of action accrued in that State and the Davis case recognizing that a suit in the State where the cause of action accrued is not an "undue burden" and not within the constitutional inhibition.

The Carmack Amendment does not take away the pre-existing right to sue the delivery carrier (Chicago R. Co. vs. Whitnack, 258 U. S. 369), and does not change the presumption that the damage was done in Maryland. That presumption is "that property, starting in good condition, remains so until the last moment when it could have been harmed." (Charleston R. Co. vs. Varnville, 237 U. S. at 602; also 258 U. S. 369, supra, and P. B. W. R. Co. vs. Diffendal, 109 Md. at 505).

While the Carmack Amendment does not enlarge any *pre-existing* jurisdiction over the initial carrier based on *doing business* (St. L. R. Co. vs. Alexander, 227 U. S. at 226; 143 Md. at 68), it does not change the place of performance; and for some purposes makes the delivering carrier the agent of the initial carrier. Each initial carrier contracted with "any holder" of the bill of lading to deliver safely *at the point of ultimate destination;* and not merely (as before the Amendment) *to the termination of its* line. The Alexander case (supra) is an instructive one. The point of shipment was in Texas; and the initial carrier gave a bill of lading as required by the Carmack Amendment. The point of destination, through connecting carrier, was New York; which the Court says was the place where the cause of action accrued; "the cause of action having accrued in New York by the failure to keep the contract for the safe delivery of the goods there, the service could be properly made under the New York Statute in the absence of other designated officials, upon the resident director." (227 U. S. at 226).

The Davis case adopted the "implied assent" theory, wherever the State statute is reasonable as to suit and service. It is not unreasonable to make a foreign corporation amenable to a suit in the State where it habitually does "a recognized part" of its business, if the plaintiff is a resident and party to the transaction, or where a non-resident, if the place of performance or breach is within the State; this latter condition is within the exceptions suggested in the Davis case; and within Sections 412 and 92 of Art. 23; and not unreasonable. It is only where there is no reasonable statute, that the personal presence theory will survive. So that these Maryland statutes when construed under the Federal decisions are reasonable and not repugnant either to the "due process" clause or the Commerce clause of the Federal Constitution.

In the Barroll case under the agreed statements of facts, the plaintiff has no interest in the subject matter of the suit; is merely an assignee for collection of a non-resident assignor.

To allow this suit to be maintained merely because the plaintiff is a resident of Maryland, would destroy the "Davis Case" and would allow resident

assignees of non-resident claimants to bring suit against a foreign carrier on an Interstate Commerce shipment, and force the carrier to defend in a State in which the cause of action did not accrue and in which the transaction g'ving rise to the case was not entered into; which would be the serious and unreasonable burden to Interstate Commerce condemned in the Davis case.

In the cases at bar the contract for the safe delivery of goods was not made in Maryland, but from the point of view of an "undue burden" on Interstate Commerce, that does not make any substantial difference.

(a) The motion will be overruled in each case of a Maryland plaintiff where the cause of action accrued in that State;

(b) A non-resident plaintiff where the cause of action accrued in that State;

(c) Will be granted in the case of non-resident plaintiff where the cause of action did not accrue in Maryland.

(d) A resident plaintiff, who is merely an assignee for collection.

I will sign the necessary orders.