## AMERICAN CAR & FOUNDRY CO. v. BRASSERT.

### No. 4710.

Circuit Court of Appeals, Seventh Circuit.

June 24, 1932.

Rehearing Denied Oct. 13, 1932.

163

Charles J. Hardy and Noah A. Stan-cliffe, both of New York City, and John R. Cochran, Leonard F. Martin, and Paul R. Conaghan, all of Chicago, Ill., for appellant.

Roy O. West, Percy B. Eckhart, and Lewis C. Jesseph, all of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

The question presented by this appeal is whether the libel states sufficient facts to entitle appellant to limit its liability, if there be any liability.

In support of the trial court's ruling that the facts pleaded are not sufficient for that purpose, appellee relies upon three propositions: (1) At the time the boat was destroyed appellant was not the owner thereof within the meaning of the word "owner" as used in the statutes upon which appellant relies. (2) The statutes limiting the liability of owners of vessels do not apply to one engaged solely in the manufacture of gasoline-propelled yachts and cruisers or other

164

vessels. (3) Since the boat was not manned and operated by a master and crew of appellant, there is no liability that can be limited by a court of admiralty.

If appellee's position is correct as to any one or more of the propositions above set forth, the ruling of the trial court must be affirmed.

■ In determining whether appellant was the owner of the boat at the time of the accident, it is quite necessary to refer to the conditions as they existed at the time of the enactment, as well as to subsequent decisions, in order to gather, if possible, the reasons which prompted the legislation and guided the courts' interpretation of it.

In The Main v. Williams, 152 U. S. 122, 14 S. Ct. 486, 487, 38 L. Ed. 381, the court, in referring to limited liability of shipowners, said:

"The earliest American legislation upon this subject is found in a statute of Massachusetts passed in 1818, and revised in 1836. This was taken substantially from the statute of George II. It was followed by an act of the legislature of Maine in 1831, copied from the statute of Massachusetts.

"The attention of Congress does not seem to have been called to the necessity for similar legislation until 1848, when the case of The Lexington, reported under the name of New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344 [12 L. Ed. 465], was decided by this court. In this case the owners of a steamboat, which was burned on Long Island Sound, were held liable for about $18,000 in coin, which had been shipped upon the steamer and lost. In consequence of the uneasiness produced among shipowners by this decision, and for the purpose of putting American shipping upon an equality with that of other maritime nations, Congress, in 1851, enacted what is commonly known as the Limited Liability Act * * *

"'This statute, whenever applied, must derogate from the direct right of the shipowner against the other ship-owner. * * * It should be so construed as to derogate as little as is possible consistently with its phraseology, from the otherwise legal rights of the parties.' * * * being in derogation of the common law, we think the court should not limit the right of the injured party to a recovery beyond what is necessary to effectuate the purposes of Congress."

In Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U. S. 19, 46 S. Ct. 379, 380, 70 L. Ed. 805, the court said:

"The rule of limited liability of owners of vessels is an ancient one. It has been administered in the courts of admiralty in Europe from time immemorial and by statute applied in England for nearly two centuries. * * * Our statutes establishing the rule were enacted to promote the building of ships, to encourage the business of navigation, and in that respect to put this country on the same footing with other countries. * * * The rule should be applied having regard to the purposes it is intended to subserve and the reasons on which it rests."

In The Scotland, 105 U. S. 24, 30, 26 L. Ed. 1001, the court, referring to the same statute, said:

"This statute declares the rule which the law-making power of this country regards as most just to be applied in maritime cases. The great carrying trade by land is governed by substantially the same principle; being in the hands of corporate associations, whose members are not personally liable for acts of the employees, but risk only the amount of their capital stock in the corporation. * * * Whenever the public interest requires the employment of a great aggregation of capital, exposed to immense risk, some limitation of responsibility is necessary in order that men may be induced to contribute to the enterprise."

Obviously, therefore, the purpose of the statute is to promote shipping or maritime commerce by limiting the liability, under certain conditions, of the owners of vessels who engage in it. The conditions are (1) that there must be an act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred for which the owner of the vessel is liable to respond; (2) the act or thing which resulted in such damage must have occurred without the privity or knowledge of the owner. Under the statute, if the accident which caused the damage was with the privity or knowledge of the owner of the vessel, he is not entitled to limitation of his liability. In other words, the statute does not protect him against liability for his direct acts or omissions, but only against acts and omissions of others which occurred without his privity or knowledge, and for which he is liable. The liability which the statute limits is an imputed one, and the imputation is raised because of his ownership and the relationship which exists between himself and those in charge of the vessel.

In the instant case it is not claimed by either party that at the time of the accident

there was existing between the parties any relationship of agency or master and servant, or any similar relationship. Appellant had nothing whatever to do, either directly or indirectly, with the management, operation, or control of the boat. The relationship between the parties was merely that of buyer and seller. Part of the purchase price was unpaid and was not due, and appellee had not violated the contract of sale in any particular. Appellant merely retained the bare legal title of the boat as security for the unpaid portion of the purchase price. Indeed, the sixth paragraph of the sales agreement characterizes the contract as a security for the unpaid note, and we think it must be so considered. Morgan's Assignees v. Shinn, 15 Wall. (82 U. S.) 105, 21 L. Ed. 87.

It is stated in Hyde v. Shine, 199 U. S. 62, 25 S. Ct. 760, 50 L. Ed. 90, that the word "owner" has a variety of meanings—that it may include equitable as well as legal ownership, and implies something more than a bare legal title. The word "owner" is nomen generalissimum, and its meaning is to be gathered from the connection in which it is used. Warren v. Lower Salt Creek Drainage District, 316 Ill. 345, 147 N. E. 248.

The vendors of a vessel under a conditional sales agreement are not liable as owners for loss of freight or for repairs or supplies furnished to the vessel. Jones v. Pitcher, 3 Stew. & P. (Ala.) 135, 24 Am. Dec. 716; Thorn v. Hicks, 7 Cow. (N. Y.) 697; Leonard v. Huntington, 15 Johns. (N. Y.) 298; Wendover & Hinton v. Hogeboom, 7 Johns. (N. Y.) 308. In Morgan's Assignees v. Shinn, supra, it was held that a mortgagee of a vessel out of possession is not liable for repairs as an owner.

We are convinced that under the circumstances of this case appellant cannot be considered as the owner of the vessel in controversy within the meaning of the statute.

Our attention is called to Flink v. Paladini, 279 U. S. 59, 49 S. Ct. 255, 73 L. Ed. 613, as supporting appellant's position. In that case petitioner, who was injured upon a tugboat owned by the corporation, sued the corporation and its stockholders for damages arising out of said injury. He sought to hold the stockholders under the laws of California, which provide for personal and individual liability of the stockholders for the debts and liabilities of the corporation while they are stockholders. The corporation owned the boat and was protected by the statute. The stockholders also pleaded ownership and asked that their liability be limited. The court held that in common speech they would be called owners in order not to defeat the manifest intent of the statute, and to that end said, "No rational distinction can be taken between several persons owning shares in a vessel directly and making the same division by putting the title in a corporation and distributing the corporate stock." We do not regard that holding to be in any way inconsistent with our ruling.

Appellant also relies on The Milwaukee (D. C.) 48 F.(2d) 842, but in that case the agreement to sell was executory, and the performance was awaiting the doing of a future act.

A perusal of the other cases relied upon by appellant convinces us that they are readily distinguishable from the instant case as to factual content, and that they are not inconsistent with this opinion.

It has been repeatedly held that the manufacture of boats is not a maritime enterprise. Edwards v. Elliott, 21 Wall. (88 U. S.) 532, 22 L. Ed. 487; The Winnebago, 205 U. S. 354, 27 S. Ct. 509, 51 L. Ed. 836; North Pacific Steamship Co. v. Hall Brothers Marine Railway & Shipbuilding Co., 249 U. S. 119, 39 S. Ct. 221, 63 L. Ed. 510; Thames Towboat Co. v. The Francis McDonald, 254 U. S. 242, 41 S. Ct. 65, 65 L. Ed. 245.

It must be borne in mind that appellee's cause of action is not based on appellant's ownership. Appellant is not sued as an owner, but as a manufacturer or builder, and the gist of the action is appellant's direct negligence in construction, equipment, and inspection, a failure of a duty which, so far as liability is concerned, is in no way connected with maritime enterprises or with appellant's ownership. Under such circumstances, to permit appellant to limit its liability on the ground that it holds a bare legal title by reason of a conditional sale, which appellant must be considered as admitting is a mere security for the unpaid purchase price, we think is going further than the statute warrants.

We are further of the opinion that the statute purports to limit only that liability which arises from or grows out of ownership. In the instant case there is no such liability claimed, and, until such liability is apparent, there can be no limitation.

Decree affirmed.