## THE SCHUYLKILL.

### (District Court, E. D. New York. March 6, 1918.)

1. ADMIRALTY ☞65—EXCEPTIONS TO LIBEL—ADMISSION.

   Where claimant excepted to a libel on the ground that no admiralty lien was in existence or had been created, the allegations of the libel are for the purpose of the exceptions admitted.

2. MARITIME LIENS ☞11—BUILDING OF VESSELS—REPAIRS—"MARITIME CONTRACT."

   While the building of a vessel before it is launched is not an admiralty contract, because done wholly on land, the repair of a vessel, to enable a continuation of her voyage and for the purpose of obtaining a new registry, where not equivalent to the building of a new vessel, is a "maritime contract," and gives a lien.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Contract.]

3. MARITIME LIENS ☞25—STATUTORY LIENS—REPAIRS.

   Under Act June 23, 1910, c. 373, § 1, 36 Stat. 604 (Comp. St. 1916, § 7783), declaring that any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel upon the order of the owner, shall have a maritime lien on the vessel, which may be enforced by a proceeding in rem, architects, who prepared plans for repairs to the hull of a vessel, her engines, boilers, and machinery, are entitled to a lien for their services, for undoubtedly, if the person who did the work of repair should include a charge for drawing plans, he would have a lien therefor, and the rule should be the same where the plans were prepared independently by architects.

In Admiralty. Libel by Harry G. Smith and another against the steamer Schuylkill, her engines, etc. On exceptions to libel by claimant. Exceptions overruled.

Robert M. McCormick, of New York City, for libelants.
Bullowa & Bullowa, of New York City, for claimant.

CHATFIELD, District Judge. The libelants seek to recover for work done as architects upon the steamer Schuylkill, in the way of preparing plans for repairs to her hull, engines, boiler, machinery, etc. The libel alleges that this was on the order of the owners and of a person authorized by them. Exceptions have been filed to these allegations. The charge for the work of these architects was $12,222.42 (of which $6,202.01 has been paid), while the vessel was in the port of Buffalo; and while in the port of Quebec the libelants furnished repairs to the steamer Susquehanna, amounting to $3,101.93.

It would seem that the word "Susquehanna," in the third allegation of the libel, is a clerical error, which has as yet not been corrected, but it does not enter into the present question.

[1-3] The claimant has excepted to the libel generally, contending that no maritime lien exists or has been created by statute (36 Stat. 604, Act of June 23, 1910) for the services of an architect. No authority has been produced for the claim that such services will create a general maritime lien. The statute (section 1) uses the words "furnishing repairs, supplies, or other necessaries, including the use of

dry dock or marine railway," in defining the articles or work which may be made the basis for a statutory lien.

The exceptions to the libel admit, for the purposes of this consideration, the facts as alleged, and include an allegation that the plans and specifications and superintendence were for the making of repairs. The Schuylkill was evidently a vessel in service before this work was done, and continuing thereafter upon what is termed in the libel "her voyage." The libel also alleges that the repairs were necessary to make the vessel seaworthy. This takes out of the case any suggestion that the work done for obtaining a new registry was equivalent to the building of a new vessel. It has been held that the building of a vessel, before it is launched, is not a maritime contract, as it takes place entirely upon the land, and as the object upon which the work is done has not yet reached the point where it is within so-called admiralty jurisdiction. The Dredge A (D. C.) 217 Fed. 617.

Under the general lien laws of the state of New York, and such cases as Stryker v. Cassidy, 76 N. Y. 50, 32 Am. Rep. 262, and Spannhake, Inc., v. Mountain Const. Co., 159 App. Div. 727, 144 N. Y. Supp. 968, architects' fees are treated as labor and included in the word "repairs." The language of that statute is somewhat different from the one now under consideration. But the general application of the words has some force by analogy. It has been held in New Haven Steamboat Co. v. Mayor (D. C.) 36 Fed. 716, and The Dorchester (D. C.) 134 Fed. 564, that the cost of survey and superintending repairs, arranging bids, and preparing contracts for the same, were proper expenses, which could be included within the word "repairs," and hence would come under the maritime lien law, if credit was furnished directly to the vessel. In the case of The J. Doherty (D. C.) 207 Fed. 997, it was held that towage was not a "necessary," in the nature of repairs or supplies, when the language of the Lien Law was considered from the standpoint of the proceedings in Congress which led to its adoption. But that case was actually disposed of by a finding that the credit had been given to the charterer, and not to the vessel, for services which might create a maritime lien without involving the statute.

In The Alligator, 161 Fed. 37, 88 C. C. A. 201, it is said that a lien arises for pilotage service, for seamen's wages, for towage service, and for salvage service, whether or not they be rendered to a domestic vessel. An architect's services are not within this class, and no lien can arise unless it be given by the statute in question.

If the person who did the work of repairing should include a charge for drawing plans, it would evidently give him a lien therefor. It would follow that the work was therefore a part of the repairs, even when done by a third party. No sufficient reason is shown why a different holding should be made, and the exceptions will be overruled.