## THE MINNIE V.

District Court, D. Massachusetts. December 22, 1927.

No. 3714.

1. Intoxicating liquors ⬅255—Only lienholders may share in proceeds of forfeited vessel engaged in illegal liquor traffic.

When a vessel is forfeited and sold for violation of liquor laws, only lienholders can share in the proceeds.

2. Maritime liens ⬅10—No lien exists for supplies or materials necessary for construction or equipment of vessel, or furnished before she sailed.

No maritime lien exists against vessel for supplies or materials necessary for construction or equipment, or put on vessel before she sails.

3. Intoxicating liquors ⬅255—Shipping ⬅30½—Mortgage of vessel is not maritime lien, and mortgagee not entitled to share proceeds of liquor forfeiture sale.

Mortgagee of vessel is not maritime lienholder, entitled to share in proceeds of forfeiture sale of vessel engaged in liquor traffic.

4. Maritime liens ⬅13—No lien for insurance premiums exists against vessel, entitling insurer to share in proceeds of forfeited vessel.

Insurer has no lien against vessel for premiums, and so cannot have payment of premiums from proceeds of forfeiture sale of vessel.

5. Maritime liens ⬅10—Engineer's services, moving vessel under construction to another port, held lienable.

Services as engineer in moving partly constructed vessel from one port to another for completion held to give right to lien.

6. Maritime liens ⬅69—In determining lien claimant's right to share in forfeiture sale proceeds, credits on account should be applied to nonlienable items.

Application of credits or payments on lien claimant's account, to determine right to share in proceeds of forfeited vessel, should be made to unsecured or nonlienable items.

In Admiralty. Suit by the United States against the gas screw fishing vessel Minnie V. On distribution of proceeds.

Ellen L. Buckley, Asst. U. S. Atty., of Boston, Mass., for the United States.

Robert A. Terry and Morris R. Brownell, both of New Bedford, Mass., and John H. Backus, of Boston, Mass., for intervening petitioners.

LOWELL, District Judge. The gas screw fishing schooner Minnie V. was built in Kennebunkport, and when partly completed was taken to New Bedford under her own power, where further equipment was supplied. In the latter part of April, 1925, she sailed from that port on her first voyage, and about two years later was forfeited to the government for engaging in the liquor traffic, and was sold. Several libels were brought to recover for materials or supplies furnished; there was also a claim by a mortgagee, and one by an insurer.

[1-4] In cases of forfeiture like the present, only lienholders can share in the proceeds of the sale of the vessel. The St. Jago de Cuba, 9 Wheat. 409, 6 L. Ed. 122; The Eugenia Emilia (D. C.) 298 F. 340. This rule of law disposes of all the libels, so far as they relate to supplies or materials necessary for the construction or equipment, put on the vessel before she sailed (People's Ferry Co. v. Beers, 20 How. 393, 15 L. Ed. 961; Roach v. Chapman, 22 How. 129, 16 L. Ed. 294; The Winnebago, 205 U. S. 354, 27 S. Ct. 509, 51 L. Ed. 836; Thames Towboat Co. v. The Francis McDonald, 254 U. S. 242, 41 S. Ct. 65, 65 L. Ed. 245; The Paradox [D. C.] 61 F. 860), and also of the claim of the mortgagee (The J. E. Rumbell, 148 U. S. 1, 13 S. Ct. 498, 37 L. Ed. 345), and insurer (In re Insurance Co. [D. C.] 22 F. 109, The Mame [D. C.] 184 F. 968).

There remain only a few items for supplies or services which give rise to a lien.

The Hathaway Oil Company has a lien for $164.62, the balance due for motor oil furnished in 1926 and 1927.

[5] The Wolverine Motor Works provided an engineer to take the vessel from Kennebunkport to New Bedford, at a cost of $119.42. I rule that this service gives rise to a lien. In 1927 it repaired the engine, and also furnished certain equipment, at a cost of $410.94, and it is admitted that there is a lien for this repair and equipment. The sum of these two amounts is $530.36. The vessel was entitled to credits of $685.42, and of this amount the sum of $314 was by agreement

applied against the bill for repairs and equipment. There remains a balance of $216.36, due to the Wolverine Motor Works. On this amount there was no agreement as to how the credits above referred to should be applied.

[6] The principal question in the case arises over the application of these credits. The learned counsel for the government contends that the question was decided in the case of The St. Jago de Cuba, 9 Wheat. 409, at page 418, 6 L. Ed. 122. I am very doubtful whether the decision should be interpreted in the manner contended for. As far as I am aware, the case has never been cited for this point, and there are several authorities against it. I am of opinion that the rule which should be followed is that laid down by Judge Morrow in The Katie O'Neil (D. C.) 65 F. 111, that the credits should be applied in payment of the unsecured claims. The Wolverine Motor Works, therefore, has a lien in the sum of $216.36.