## THE HALL.
## THE SELWYN EDDY.
### No. 165.

District Court, D. Massachusetts.
Feb. 20, 1931.

Robert A. Terry, of New Bedford, Mass., for plaintiff.

John W. Lowrance and Ray Henry, both of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is a libel in admiralty to enforce a maritime lien upon a steam screw, known at the time as the Selwyn Eddy.

### Statement of Facts.

The steamer ran ashore at Naushon Island, in this district, some time prior to February 23, 1927, on which date the wreck was sold to one Osgood S. Gilbert, who obtained a bill of sale of the entire interest in the steamer.

On or about July 7, 1927, Gilbert requested the libelant to furnish him with a diver and with a boiler and pump, to be used by Gilbert and his crew in floating the vessel.

The libelant complied with this request, furnishing a diver for 11 days and the boiler and pump for six weeks. The equipment and the services of the diver were employed in raising the Selwyn Eddy and bringing her to New Bedford on August 12, 1927. The charges for these services were made to the Selwyn Eddy and owners, and the total amount charged was $601.09, according to the following statement rendered by the libelant to the owners on September 10, 1927:

"Frank C. Taylor
"General Contractor
* * * * *
"New Bedford, Mass., September 10, 1927
"In account with S. S. 'Selwyn Eddy' and owners

| | |
|---|---|
| Labor | $ 72 83 |
| Insurance @ 5.00% | 3 64 |
| Services of Diver 11 days @ $25.00 | 275 00 |
| Teaming 3 hrs. @ $2.00 | 6 00 |
| | $357 47 |
| 15% | 53 62 |
| Rental of boiler 6 weeks @ $15.00 | 90 00 |
| Rental of 6" pump 6 weeks @ $15.00 | 90 00 |
| Use of lighter 4 hrs. @ $2.50 | 10 00 |
| | $601 09" |

The prices charged for the labor and for the rental I find to be reasonable. The bill rendered shows charges for labor amounting in the aggregate to $72.83 which was principally charges for transporting by truck the machinery and equipment and the diver's apparatus to the water front.

On the date when Gilbert parted with his interest in the boat, July 23, 1927, there was due for such labor and rent at the prices above noted the sum of $190.

On the 23d day of July, 1927, Gilbert transferred his interest in the stranded steamer to Philip C. Heald, who subsequently transferred the entire interest in the steamer to the Heald-Hall Transportation Company, the claimant in this proceeding. Heald paid Gilbert $600 for the steamer, and agreed to advance from time to time further sums as they might be required by Gilbert in raising and repairing the vessel, with the understanding that, when the vessel was sold, Heald would be reimbursed for whatever he had advanced, including the $600 paid for the steamer, and the net profits were to be divided between him and Gilbert. Heald advanced, between July 23 and July 28, 1927, $1,550 on account of this work, and subsequently he advanced other sums for the same purpose. Gilbert was supposed to present Heald with vouchers covering all disbursements in connection with the work, but he failed to furnish vouchers sufficient to cover all of the advancements made by Heald. The difference between the amount advanced and the amount covered by vouchers would be more than sufficient to cover the libelant's claim.

When Gilbert requested the libelant to furnish the labor and equipment, he represented that he was the owner of the steamer, and the libelant knew that the steamer

was on the rocks in a damaged condition on Naushon Island. The libelant had reason to believe, and did believe, that Gilbert was not undertaking the repairs of the Selwyn Eddy without financial assistance, and when he extended the credit he did so in the belief that Gilbert was the owner, but he was not advised as to whether Gilbert was the sole owner or only a part owner. The libelant was also ignorant of the fact that Heald had advanced money to Gilbert sufficient to enable the latter to pay the libelant's bill.

The libelant had never been advised of the transfer from Gilbert to Heald until after he had fully performed his contract with Gilbert. He did not, during the progress of work, consult the records at the Custom House in Boston or make other inquiries to ascertain whether Gilbert was the true owner or whether he had parted with his title.

### Conclusions of Law.

I am unable to accept the theory of the claimant that the case presents a salvage operation with the owner as salvor. It seems clear to me that Gilbert purchased the steamer while it. was stranded and entered upon the task of repairing her so that she would be able to function as a seagoing vessel. The first step in this work of repairing was necessarily the raising of the vessel, and to that end the libelant furnished labor and equipment to .the vessel which could be found to be reasonably necessary in this work of repair.

The items for hauling the apparatus to the water front do not give rise to a maritime lien and must be excluded. The William Leishear (D. C.) 21 F.(2d) 862; The American, 1931 A. M. C. 197, 203.[1] The same would be true of the item of insurance. The Wabash (D. C.) 279 F. 921.

Respecting the items for the services of the diver and rental for the use of the boiler, pump and lighter, I have no doubt that these items constituted labor and materials furnished to the vessel and come within the scope of the act, which gives to any person furnishing repairs to a vessel a maritime lien which may be enforced by a suit in rem. Title 46, U. S. C. § 971 (46 USCA § 971). See The City of Atlanta (D. C.) 17 F.(2d) 308.

The services performed by the diver were necessary in order to render the hull sufficiently water-tight to enable the owner to float the vessel. These services were distinctly as necessary as that of an architect who is held to have a lien for work in preparing plans for repairs. The Schuylkill (D. C.) 249 F. 781. See, also, The Susquehanna (C. C. A.) 295 F. 322.

That one furnishing a pump and boiler to a vessel to be used in the work of floating her in order that she may undergo repairs has a lien under the statute is hardly open to dispute. See The Dredge A (D. C.) 217 F. 617; The Convoy (D. C.) 257 F. 843.

In conclusion, I find that the libelant would be entitled to assert a maritime lien for the sum of $506.25, made up as follows:

| | |
|---|---|
| Services of diver | $275.00 |
| 15 per cent. of same | 41.25 |
| Rent of boiler | 180.00 |
| Use of lighter | 10.00 |
| Total | $506.25 |

The claimant has advanced two reasons why the rights of the libelant to enforce this maritime lien cannot be now enforced in this court. These are: First, that, while the work was in progress, to wit, July 23, 1927, Gilbert sold his interest in the vessel to Heald; and, second, that the new owner put Gilbert in funds sufficient to pay the libelant's claim.

In my opinion neither of these facts operate to defeat the rights of the libelant. When the work was ordered, Gilbert was the sole owner, and, after the transfer from Gilbert to Heald, Gilbert was acting as agent for the new owner with full authority to bind the vessel for necessary repairs and supplies. Moreover, the libelant was in possession of no knowledge which would put him upon inquiry respecting a change of ownership. When the work was ordered, Gilbert was the sole owner, and a careful investigation by the libelant would have only disclosed that fact. Section 972 of title 46 U. S. C. (46 USCA § 972) provides that the managing owner, or any person to whom the management of the vessel at the port of supply is intrusted, shall be presumed to have authority from the owner to procure repairs, supplies, etc., and I do not find in section 973 anything that requires the person furnishing the repairs or supplies to keep constantly on the watch to see that there has been no change of ownership during the performance of the contract. It is sufficient that the contract under which the supplies were furnished was made with the true owner of the vessel, and it is immaterial, as I view it, that a portion of the services was rendered after Gilbert parted with his title to the vessel.

---

[1] Commissioner's report.

The second objection to the libelant's lien is apparently based upon the doctrine of the earlier maritime law that there is no presumption that credit was extended to the vessel when it appears that the master has funds on hand, or at his command, which he ought to have applied to the payment of the repairs or supplies, and that the material-man knew of that fact, or was in possession of knowledge sufficient to put him upon inquiry so that due diligence on his part would have revealed the fact that the master had no authority to contract on the credit of the vessel. Merchants' Mutual Insurance Co. v. Baring, 20 Wall. 159, 22 L. Ed. 250.

Whether that doctrine still obtains under the existing statute which obviates the necessity of alleging and proving that credit was given to the vessel is a question which need not be determined, because, under the earlier rule, it was held that, whenever the necessity for the repairs and supplies is once made out, it is incumbent upon the owner, if he alleged that the funds could have been obtained upon his personal credit, to establish by competent proof that fact and that the materialman knew the same or was put upon inquiry. Merchants' Mutual Insurance Co. v. Baring, supra.

In the case at bar this burden is not sustained by the evidence. On the contrary, I have found affirmatively that the libellant had no knowledge respecting the advances which had been made by Heald to Gilbert. To say that an undisclosed owner could, by putting his agent in funds, defeat the maritime lien of a materialman, who was ignorant of the fact, is to lay down a proposition so astounding that I am loathe to believe it can have any place in the maritime laws of this country, regardless of the statute.

The libellant therefore has a good and valid maritime lien for the sum of $506.25 which can be enforced in these proceedings, and I so rule.