310 F.2d 547
 Robert J. GROW, J. Alfred Grow, Jr., Edwin S. Englebert d/b/a Grow Sumner Englebert Agencies, a Co-partnership, Libelants-Appellees,
v.
STEEL GAS SCREW LORAINE K, Her Engines, Tackle, Apparel and Furniture, Respondent-Appellant.
 No. 14773.
 United States Court of Appeals Sixth Circuit.
 December 8, 1962.
 
 Robert L. Coopes, Detroit, Mich., for appellant.
 Fred H. Keidan, Watson, Lott & Wunsch, Detroit, Mich., for appellee.
 Before WEICK and O'SULLIVAN, Circuit Judges, and DARR, Senior District Judge.
 WEICK, Circuit Judge.
 
 
 1
 Insurance brokers filed a libel in Admiralty in the District Court and attached the tug LORAINE K to enforce a lien for insurance premiums created by a Michigan statute.[1]
 
 
 2
 The District Court overruled exceptions to the libel in an opinion reported in 185 F.Supp. 803. Thereafter, the District Court heard the case on its merits and in an opinion, which was adopted as findings of fact and conclusions of law, decided in favor of the brokers. The court entered judgment for the premiums, interest and costs which amounted to $2,339.92 and ordered the vessel sold for nonpayment thereof. This appeal followed.
 
 
 3
 The vessel was owned by Joseph H. Carollo. He and his attorney caused a corporation known as Marine Transport Corporation to be organized under the laws of Michigan. Out of 5,000 issued shares Carollo owned 2,250 shares or 45% thereof and his attorney owned 500 shares or 10%. They controlled the company. Carollo was president and director of the company. His attorney was also an officer, director and resident agent for the company.
 
 
 4
 After the corporation had been organized Carollo entered into a bareboat charter with it. In the charter agreement Carollo reserved the right to use the tug for his own operations when not in use by the charterer.
 
 
 5
 The charter provided for insurance.[2] It also contained a clause in which the charterer agreed not to permit or suffer any lien or encumbrance upon the vessel.[3]
 
 
 6
 Prior to the charter Carollo carried no insurance on the vessel.
 
 
 7
 The attorney ordered the insurance policies from the brokers with the assent of Carollo. Seven policies were issued and in all of them Carollo and Marine Transport Corporation were the named insureds. Three of the policies were mailed to Carollo. The brokers had knowledge of the charter.
 
 
 8
 The brokers billed Marine Transport Corporation for the premiums and later instituted an action in the state court in Michigan to collect them. Bankruptcy of Marine Transport Corporation ensued and the present libel in Admiralty was filed.
 
 
 9
 Appellant contends that the federal courts have no admiralty jurisdiction under Article III, Section 2 of the Constitution of an action in rem to enforce a lien for marine insurance premiums created by state statute.
 
 
 10
 The insurance policies were marine contracts and the federal court without question had jurisdiction of actions in personam to enforce them. In re Insurance Co. of Pennsylvania, 22 F. 109 (D.C.N.D.N.Y.), affirmed Insurance Co. of Pennsylvania v. Proceeds of Sale of Barge Waubaushene, C.C., 24 F. 559; The Jennie B. Gilkey, 19 F. 127 (Cir.Ct. D.Mass., 1884); The Mame, 184 F. 968 (D.Conn., 1911); The Wabash, 279 F. 921 (D.Conn., 1922); The Minnie, 24 F. 2d 604 (D.Mass., 1927); The Hall, 48 F.2d 646 (D.Mass., 1931); The Prilla, 21 F.Supp. 383 (D.Mass., 1937). See also: 1 Benedict, Admiralty (6th ed.) § 110a; 2 Am.Jur.2d, Admiralty, § 70 p. 758.
 
 
 11
 Neither admiralty law nor the Federal Maritime Lien Act[4] (46 U.S.C. §§ 971-975) provided for a lien for unpaid insurance premiums. Gilmore & Black, The Law of Admiralty, p. 512; The Minnie V, D.C., 24 F.2d 604; The Hall, D.C., 48 F.2d 646; The Prilla, D.C., 21 F.Supp. 383.
 
 
 12
 Prior to the Federal Maritime Lien Act, a state lien for insurance premiums was enforced in Admiralty. The Guiding Star, 9 F. 521 (D.C.S.D.O.), affirmed 18 F. 263; Marine Insurance Co. v. The Daisy Day, 40 F. 603 (Cir.Ct., W.D.Mich., 1889). The brokers sole reliance for a lien is on the Michigan statute. Since no lien for insurance premiums was provided by the Federal Maritime Lien Act, we see no reason why Admiralty should not enforce a state lien.
 
 
 13
 State legislation, maritime in nature but applicable to areas not considered by federal maritime law or covered by enactments of Congress, is enforceable in the federal courts and this includes state statutes creating in rem liens for insurance premiums. 1 Benedict, Admiralty (6th ed.) § 35, pp. 79, 83; 2 Am. Jur.2d Admiralty, § 70 p. 759, § 92 pp. 772, 773.
 
 
 14
 One of the most significant cases considering the status of state laws in the maritime field is Wilburn Boat Co. v. Fireman's Insurance Company, 348 U.S. 310, at 313, 75 S.Ct. 368, at 370, 99 L.Ed. 337 (1955) rehearing den. 349 U.S. 907, 75 S.Ct. 575, 99 L.Ed. 1243 (1955), wherein the Court succinctly stated:
 
 
 15
 "Since the insurance policy here sued on is a maritime contract the Admiralty Clause of the Constitution brings it within Federal jurisdiction. * * * But it does not follow, as the courts below seemed to think, that every term in every maritime contract can only be controlled by some federally defined admiralty rule. In the field of maritime contracts as in that of maritime torts, the National Government has left much regulatory power in the States."
 
 
 16
 As to the contention that the Federal Government had pre-empted the regulation of all marine law, including insurance, the Court commented 348 U.S. at 321, 75 S.Ct. at 374:
 
 
 17
 "It is faintly contended that the Federal Constitution forbids States to regulate marine insurance, even where Congress acquiesces or expressly consents. This contention is so lacking in merit that it need not be discussed."
 
 
 18
 In Romero v. International Terminal Operating Co. et al., 358 U.S. 354, 79 S. Ct. 468, 3 L.Ed.2d 368 (1959) the Court reaffirmed this doctrine. The Court said:
 
 
 19
 "It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope. State-created liens are enforced in admiralty. State remedies for wrongful death and state statutes providing for the survival of actions, both historically absent from the relief offered by the admiralty, have been upheld when applied to maritime causes of action. Federal courts have enforced these statutes. State rules for the partition and sale of ships, state laws governing the specific performance of arbitration agreements, state laws regulating the effect of a breach of warranty under contracts of maritime insurance — all these laws and others have been accepted as rules of decision in admiralty cases, even, at times, when they conflicted with a rule of maritime law which did not require uniformity."
 
 
 20
 See also Just v. Chambers, 312 U.S. 383, 388, 61 S.Ct. 687, 691, 85 L.Ed. 903 (1941).
 
 
 21
 There remains only the question as to the effect of the charter provision against liens and encumbrances which appellant claims bars recovery. United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361; Lindbar, Inc. v. St. Louis Fuel & Supply Co., 276 F.2d 882 (C.A.6). In our judgment, this provision should not be construed to prevent the owner from creating a lien on his own vessel. Mannheim Insurance Co. v. Hollander, 112 F. 549 (D.C.S.D.N.Y.), aff'd, 120 F. 1020 (C.C.A.2).
 
 
 22
 The District Court found as a fact that there was an identity of interest between Carollo and his corporation. The insurance was ordered by Carollo's attorney with his knowledge and assent. He was one of the named insureds. If a loss had occurred the proceeds of the policies would have been payable to Carollo and the corporation as their interests appeared. Under the charter, Carollo reserved the right to use the boat when not in use by the corporation.
 
 
 23
 We think the findings of fact of the District Court were supported by substantial evidence and are not clearly erroneous.
 
 
 24
 Since Carollo assented to the order for the insurance policies, he may not question the acts of his agent. New York Trust Co. v. Bermuda-Atlantic S. S. Co., 211 F. 989 (D.C.S.D.N.Y.).
 
 
 25
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 "Every watercraft of above five 5 tons burthen, used, or intended to be used, in navigating the waters of this state, shall be subject to a lien thereon — * * *
 "For sums due for bottomry, salvage, towage, lighterage, insurance, labor at pumping out or raising such watercraft, and for general average, whether in whole or in part, within this state." M.S.A. § 26.342, Comp.Laws 1948, § 570.402.
 
 
 [2]
 Item 3 provided: "Charterer shall provide hull insurance on the chartered vessel during the term of the charter in a total amount not less than $20,000.00 and P & I insurance in a total amount not less than $100,000.00. Charterer shall also provide towers' liability insurance in an amount adequate for the operation undertaken."
 
 
 [3]
 Item 9 provided: "Charterer agrees that it will not suffer or permit to be continued any lien or encumbrance of any character upon or against the said vessel which has or might have priority of title or interest over the owner and agrees that it will keep the said vessel free and clear of any debts, claims and liens whatsoever, except such as may arise by or through the owner."
 
 
 [4]
 Section 971 provides: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."
 Section 972 provides: "The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel."