756 F.2d 357
 EQUILEASE CORPORATION, Plaintiff-Appellant, Cross-Appellee,
v.
M/V SAMPSON, etc., et al., Defendants-Appellants, Cross-Appellees,
v.
FRED S. JAMES & CO., etc., Intervenor-Appellee, Cross-Appellant.
FRED S. JAMES & CO., etc., Plaintiff-Appellee, Cross-Appellant,
v.
EQUILEASE CORP., et al., Defendants-Appellants, Cross-Appellees.
 No. 83-3298.
 United States Court of Appeals,
Fifth Circuit.
 April 1, 1985.
Opinion on Rehearing En Banc May 29, 1985.
 
 Adams & Reese, Frank M. Adkins, Philip A. Franco, New Orleans, La., for Equilease Corp.
 Burke & Mayer, James G. Burke, Jr., Therese B. Forrester, New Orleans, La., for Fred S. James & Co.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 On Petition for Rehearing
 (Opinion Sept. 27, 1984, 5th Cir.1984, 742 F.2d 852)
 Before REAVLEY, JOHNSON and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 On this petition for panel rehearing, Equilease has challenged in fundamental ways, the correctness of our earlier opinion. Pursuant to our request James has submitted a response and we have carefully reviewed the arguments of the parties on rehearing. We are now persuaded that our original opinion is incorrect. We therefore withdraw the opinion, and substitute the following.
 
 I.
 
 2
 Equilease is a financial corporation that in 1974 provided interim construction financing for three vessels, later named the M/V SAMSON, the M/V THOR, and the M/V HERCULES. In 1977 the owner of the vessels defaulted on its loan, leaving Equilease as involuntary owner of the uncompleted vessels. After determining that selling the hulls would not be economical, in 1978 Equilease moved the vessels to another shipyard for completion at its own expense. Upon completion, Equilease transferred title to each of the vessels to a separate, wholly owned, nominally capitalized Unilease[1] "shelf" corporation, taking a preferred first mortgage from each corporation in the amount of construction costs and other expenses.
 
 
 3
 Having no experience in the operation of vessels, Equilease issued a bareboat charter on each of the vessels to Solar Fleet, Inc., a company wholly owned by James S. Denning. Denning later transferred the charters to Dunnamis Offshore Towing, Inc. ("Dunnamis"), another corporation he owned. The Equilease charter required the charter party to purchase insurance for each of the vessels. Dunnamis procured this required insurance from Fred S. James & Company (James).
 
 
 4
 At the end of the first year of operation, $184,000 of the insurance premiums remained unpaid. Dunnamis informed James that the three vessels soon would begin operating in Mexico under a lucrative five-year charter agreement. Relying on this information, James decided to provide insurance for the three vessels for another year rather than cancelling the policy and bringing suit for the unpaid premiums. James paid the overdue premiums to the insurers. Then, as James explains, "to clear up the books from an accounting standpoint," he arranged for a financing company, Borg-Warner Insurance Finance Corporation ("Borg-Warner"), to pay the outstanding overdue premiums. James arranged for Borg-Warner to accept a note executed by Dunnamis and then prepared the documents necessary to effect the transaction. Borg-Warner had James guarantee the Dunnamis note so that James, rather than Borg-Warner, bore the risk of non-payment by Dunnamis. When James received funds from Borg-Warner, it made appropriate bookkeeping entries, crediting Dunnamis' overdue account in full.
 
 
 5
 During the second year of their relationship, Equilease became concerned about the manner in which Dunnamis was operating its vessels. Dunnamis already had defaulted on the charter agreement, and the charter in Mexico had not worked out as expected. Equilease, with some difficulty, finally located its vessels in Panama. It brought the vessels back to the United States at its own expense, then seized them and instituted proceedings in federal district court to foreclose on its preferred mortgages.
 
 
 6
 By that time Dunnamis evidently also had defaulted on its insurance note payments to Borg-Warner. James, as guarantor, feared that it might have to pay Borg-Warner, and therefore intervened in the foreclosure proceedings, claiming a privilege arising under state law, and, alternatively, a maritime lien against the vessels for unpaid insurance premiums. James also filed a separate but substantially similar lawsuit against Equilease and Dunnamis in personam, and against the three vessels in rem. The district court consolidated the actions.
 
 
 7
 After hearing the evidence, the court held that James had a state privilege against the vessels for the amount of the unpaid insurance premiums, and that because Dunnamis acknowledged the debt within six months of the filing of the lawsuit, the applicable six-month limitations period had not lapsed. It refused, however, to create a federal statutory maritime lien in favor of James, relying on this court's decision in Learned v. Brown, 94 F. 876 (5th Cir.1899). It then invalidated the preferred mortgage on the basis that the three Unilease corporations were "shams" and "alter egos" of Equilease against the vessels, thus reducing Equilease to the status of a general creditor against the vessels.[2] It further held that Dunnamis was not an agent of Equilease with the power to obligate Equilease to pay the premiums. It entered judgment in favor of James in rem against the vessels, and in personam against Dunnamis, who does not appeal. 568 F.Supp. 1259.II.
 
 
 8
 Equilease argues that the district court's determination that James had a valid state privilege under Civil Code article 3237 for insurance premiums is erroneous on four bases: (1) that the period for asserting the privilege is a peremptive period, rather than a prescriptive period which, contrary to the finding of the district court, could not be acknowledged or interrupted; (2) that if the time period contained in article 3237 is a prescriptive period, James' acknowledgment of the underlying debt had no effect on the privilege, since the underlying debt is distinct and separate from the privilege; (3) that no legal subrogation exists in favor of James to assert rights to the underlying debt and privilege; and (4) the underlying debt and privilege were extinguished by payment. By cross-appeal, James argues that if we invalidate the state maritime lien, then it is entitled to a lien under the Federal Maritime Lien Act, because marine insurance is a "necessary." Additionally, James alleges that Dunnamis was the agent of Equilease, and therefore Equilease, as principal, is liable in personam for the insurance procured by Dunnamis.
 
 
 9
 We have carefully reviewed these arguments, and agree with the first argument advanced by Equilease, that the time limitation period contained in Civil Code article 3237 is a peremptive period, rather than a prescriptive period. Since a peremptive period is not interrupted by acknowledgment of the debt, James' privilege expired or perempted six months from the date the insurance policy was issued and therefore James has no claim against the vessels.
 
 III.
 
 10
 Equilease's first alleged basis for reversing the district court is that James cannot assert its privilege to collect any premiums that were more than six-months overdue when it filed this lawsuit, since the time-limitation period in which to enforce the privilege had perempted with respect to earlier premiums. First let us distinguish between peremption and prescription.
 
 
 11
 Peremption is a species of prescription "with the characteristic that it does not admit of interruption of suspension." Flowers, Inc. v. Rausch, 364 So.2d 928, 931 (La.1978). "The difference between prescription and peremption is that the former simply bars the remedy where as, in the latter, time is made of essence of the right granted and a lapse of the statutory period operates as a complete extinguishment of the right." Succession of Pizzillo, 223 La. 328, 65 So.2d 783, 786 (1953).
 
 
 12
 Authority exists in Louisiana cases to support the proposition that a prescriptive period defined in a statute conferring a right is actually a peremptive period. See, e.g., Pounds v. Schori, 377 So.2d 1195, 1199 (La.1979); Succession of Pizzillo, 223 La. 328, 65 So.2d 783, 786 (1953); Guillory v. Avoyelles, 104 La. 11, 28 So. 899, 901 (1900). That the statute establishing the privilege or right also contains the prescriptive period, however, does not mean automatically that the prescriptive period is one of peremption. The Louisiana Supreme Court has stated that "each case of this nature should be considered separately on its merits." Pounds v. Schori, 377 So.2d at 1199.
 
 
 13
 Cases holding a prescriptive period to be one of peremption turn on special considerations--primarily perceived legislative intent to create a right of limited duration. In Pounds v. Schori, the statute created a prescriptive period for denying paternity of a child born in wedlock. The court relied on the legislative history of the statute, the manner in which French courts enforced an analogous provision of the Napoleonic Code, and the presumption that children born in wedlock are legitimate, to discern a legislative intent to create a right of limited duration. 377 So.2d at 1199. In Succession of Pizzillo the statute at issue effected a change in adoption laws and provided for a six-month transition period. The plain wording of the statute revealed a similar legislative intent. 65 So.2d at 786. Finally, the statute at issue in Guillory v. Avoyelles required that a challenge to a tax referendum be brought within three months of the election. The court reasoned that the taxpayers should be not allowed to complain after the beneficiary of the tax, in that case a railroad company, "has gone ahead and expended large sums of money in prosecuting the enterprise." 28 So. at 901. Thus, considerations of public policy peculiar to the statute favored holding the prescriptive period to be one of peremption. 28 So. at 900-01.
 
 IV.
 
 14
 Turning now to the particular statute before us, we note that the Louisiana Supreme Court in In re Red River Line, 115 La. 867, 40 So. 250 (1905), stated (in the syllabus) that the privilege contained in article 3237 perempts or dies at the end of six months. In that case the creditor was asserting a vendor's privilege or lien for the unpaid balance of a vessel. Although the contract declared that the transaction was a cash sale, the vendor had received a promissory note for a portion of the sale price. The promissory note was payable eighteen months after date. The purchaser was placed in receivership before the note was payable but after six months from the date of the sale. The vendor attempted to assert a vendor's privilege or lien under article 3237. The other creditors opposed the vendor's asserted privilege on the basis that the lien had either been waived, or extinguished by "prescription." The court decided the case on the latter basis.
 
 
 15
 Although the holding of the case that the period is one of peremption is contained only in the syllabus and not stated clearly in the opinion, the Louisiana courts have held that when the syllabus is prepared by the Louisiana Supreme Court, as it was by specific notation in Red River Line, it reflects the reasoning in the opinion and the ruling made. State, Through Dept. of Highway v. LaBauve, 225 La. 330, 72 So.2d 865, 867 (1954); Williams v. Marionneaux, 240 La. 713, 124 So.2d 919, 922, n. 6 (1960). Furthermore, the court's holding that the period contained in article 3237 is peremptive, rather than prescriptive, is supported by language in the text of the opinion in which the court stated that no plea of prescription was necessary. This statement would indicate that the time limitation period is peremptive since, at the time of the Red River Line opinion, it was not necessary that peremption be pleaded, but it was necessary that prescription be pleaded. La.Civ.Code art. 3460 (prior to its amendment in 1983); La.Civ.Code art. 3452. We also note that James has conceded in its brief on petition for rehearing that Red River Line held that the period contained in article 3237 is a peremptive period.
 
 
 16
 It has not been necessary in cases arising since the Red River Line decision for the Louisiana courts to specifically decide whether the time limitation period contained in article 3237 is a prescriptive period or peremptive period. In Graeme Spring & Brake Service v. DeFelice, 98 So.2d 314 (La.App.1957), the court held that the limitation period contained in article 3237 had been "interrupted" by the filing of an ordinary suit which sought to impress the vessel with the privilege. The lawsuit was instituted well within the six-month period; in other words, the privilege was timely claimed. Although the court referred to the time period in terms of "prescription," we place little significance in this use of the term in the context of the case. The term was imprecisely used without analysis as it was unnecessary to its decision to determine whether article 3237 contained a prescriptive or peremptive period because the privilege was claimed in time.
 
 
 17
 The time limitation period contained in article 3237 was also discussed in In re Safticraft Corporation, 255 F.Supp. 797 (W.D.La.1966). Again, Safticraft is not helpful here since it did not address the issue before us. The primary issue in that case was when the six-month period begins to run. The court held that in the case of a privilege arising out of the original construction of the vessel, the prescriptive period "does not commence to run until after the vessel is completed and delivered or 'sold' to the owner." Id. at 804. It was unnecessary to decide, and the court did not decide, whether the time limitation period contained in article 3237 was prescriptive or peremptive. The holding in Safticraft is clearly limited by its facts to vessels under construction.[3]
 
 V.
 
 18
 In our original opinion, in which we virtually overlooked Red River Line, we held that the time limitation period contained in article 3237 was a prescriptive period. Today we reach the opposite result. Our original opinion was based on what we perceived to be the implicit holdings of cases, earlier decided than Red River Line, analyzing article 3204, the predecessor to article 3237. These cases were Scott v. His Creditors, 3 La.Ann. 40 (1848) and Blanchin v. Steamer Fashion and Owners, 10 La.Ann. 49 (1855). In both of these cases, the time period in article 3204 (now 3237) was suspended by provisional seizure of the vessel. We concluded that the implicit holding of these cases was that the time period was prescriptive, since if it were peremptive it could not be interrupted for any reason.
 
 
 19
 Given our second occasion to consider this issue, and aided by the thoughtful briefs of Louisiana counsel, we are persuaded that the time-limitation period contained in article 3237 is a peremptive period. First, the later Louisiana Supreme Court case of Red River Line explicitly states in its syllabus that the time period is peremptive. Although the case interchangeably uses the terms "prescription" and "peremptive," this imprecision is not determinative because "peremption" is but a species of the more inclusive term "prescription." Additionally, language in the body of the text supports the argument that the Louisiana Supreme Court considered the time period to be one of peremption.
 
 
 20
 Second, we believe our earlier analysis is incorrect because the provisional seizure that suspended the privilege period in Scott and Blanchin is more properly viewed as an exercise--not an interruption--of the privilege provided by the Code. In Scott, the only creditors who were entitled to the privilege were those who had joined in the seizure of the vessel and who asserted claims falling within the statutory privilege period, thereby timely exercising their privilege. A similar result was reached in Blanchin. We hold, therefore, that the time-limitation period contained in article 3237 is a peremptive period which expired six months from the date of the insurance contract.
 
 
 21
 Finally, it is clear that none of the acts of acknowledgment asserted by James constitutes an exercise of the special six-month privilege provided in article 3237. The privilege contained in article 3237 is an accessory right to the underlying obligation to pay insurance premiums. The Red River Line opinion makes it clear that the six-month privilege is distinct from the ten-year prescriptive period for the payment of insurance premiums. Continental Insurance Co. v. Fairfield Temporaries, Inc., 437 So.2d 376 (La.App.1983). The acts of acknowledgment in this case, that is Dunnamis' partial payment of insurance premiums and promises to pay the balance, served only to interrupt the prescriptive period of the underlying obligation to pay the premiums, and was not an assertion of the privilege itself. Indeed, it is beyond dispute that James took no steps to enforce its claim under the privilege. We further hold, therefore, that the privilege provided in article 3237 expired, or "perempted," having never been claimed.
 
 VI.
 
 22
 James argues on cross-appeal that even if we hold that it does not have a valid state privilege, we should nevertheless hold in its favor by recognizing a federal maritime lien for the unpaid insurance premiums. In Learned v. Brown, 94 F. 876 (5th Cir.1899), this court held that when an insurance policy is written for the sole and exclusive benefit of the owners and does not inure to the benefit of the ship, there is no lien for insurance premiums granted under general maritime law. James argues that we should overrule Learned v. Brown in this case, since, according to James, its principles are archaic and have no place in the modern commercial world. We note initially that the Sixth Circuit recently reaffirmed in Grow v. Steel Gas Screw Loraine K, 310 F.2d 547 (6th Cir.1979), that "neither admiralty law nor the Federal Maritime Lien Act (46 U.S.C. Secs. 971-75) provide[s] for a lien for unpaid insurance premiums." Thus, this "archaic principle" has been given recent application. Furthermore, even if we were inclined to overrule Learned v. Brown, we could not do so, since it is clear that one panel of this court cannot overrule an earlier panel's decision. United States v. Albert, 675 F.2d 712 (5th Cir.1982).
 
 
 23
 James also argues that Dunnamis was the agent of Equilease, rather than a bareboat charterer. If an agency relationship did exist, Equilease, a principal, would be liable for the unpaid insurance premiums. James argues that Equilease provided the financial backing for and management control over Dunnamis to the extent that Equilease cannot be considered to have transferred dominion and control of the vessels to Dunnamis. In its opinion, the district court stated: "Although Denning[4] received 'favorite son' treatment from Equilease throughout this period, this treatment did not make him the agent of Equilease." The existence of any agency relationship is a question of fact which should not be reversed on appeal unless it is clearly erroneous. Strachan Shipping Co. v. Dresser Industries, Inc., 701 F.2d 483 (5th Cir.1983). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Musial v. A & A Boats, Inc., 696 F.2d 1149 (5th Cir.1983). After reviewing the relevant evidence, we are not persuaded by James' arguments that the district court was clearly erroneous in its conclusion that Denning was not the agent of Equilease.
 
 VII.
 
 24
 We therefore withdraw our original opinion, and reverse the district court. We hold that James' privilege as provided by Louisiana Civil Code article 3237 had expired since the time-limitation period contained in article 3237 is a peremptive period. We have carefully considered the arguments presented on cross-appeal by James, but for the reasons assigned above, we have rejected them. The district court, accordingly, is
 
 
 25
 REVERSED.
 
 
 26
 ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC
 
 
 27
 Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, CARWOOD, JOLLY, HIGGINBOTHAM, DAVIS and HILL, Circuit Judges.
 
 BY THE COURT:
 
 28
 A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,
 
 
 29
 IT IS ORDERED that this cause shall be reheard by the Court en banc without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 
 [1]
 Equilease and the three Unilease corporations are collectively referred to as "Equilease," unless indicated otherwise
 
 
 [2]
 The district court's rationale on this issue leads to confusing and contradictory conclusions, or so it seems to us. If the district court meant that the Unilease corporations are "shams" or "alter egos" of Equilease, then Equilease is the owner of the vessels and not the mortgagee. It therefore has no creditor's claim against ships it in fact owns. The district court, however, indicated that it was invalidating the mortgages "as to James," and referred to Equilease as a "legitimate creditor," but one who could not advance its claims over other general creditors. We are thankful that we are not asked to resolve this conundrum on appeal, and that its resolution is not relevant to the issues we must decide. Equilease does not appeal the district court's holding that the Unilease corporations are "shams" or "alter egos."
 
 
 [3]
 James argues on petition for rehearing that, as a general proposition, the privilege provided in article 3237 does not begin to run until a vessel is seized and sold, citing In re Safticraft. We reject James' reading of In re Safticraft since it would render the six-month period meaningless in practically all cases. This is true because the six-month period would have no relationship to the date of the contract to which the privilege applies. Additionally, we make it clear that we do not approve or disapprove the limited holding of In re Safticraft
 
 
 [4]
 Denning was the owner of Dunnamis